868 F.2d 217
 48 Fair Empl.Prac.Cas. 1674,
49 Empl. Prac. Dec. P 38,755
Elree COX, Jr., Norbert Diaz, Cortez Holland, Thessalonia
Monegan, Mark O'Bannon, Ponder Richardson, Donald
Smith, Matthew Thomas, and James
Winbush, et al., Plaintiffs-Appellees,
v.
CITY OF CHICAGO and Chicago Fire Fighters Union, Local 2,
International Association of Fire Fighters,
AFL-CIO, Defendants-Appellants.
 Nos. 88-2598, 88-2599.
 United States Court of Appeals,
Seventh Circuit.
 Jan. 27, 1989.
 
 Robert S. Sugarman, Jacobs, Burns, Sugarman & Orlove, Mary L. Mikva, Corp. Counsel, Chicago, Ill., for defendants-appellants.
 Stephen G. Seliger, Chicago, Ill., for plaintiffs-appellees.
 Before BAUER, Chief Judge, CUMMINGS, and CUDAHY Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 This case is before us on appeal from the district court's order granting plaintiffs' motion for a preliminary injunction. 700 F.Supp. 921. Plaintiffs, black and Hispanic lieutenants who passed the captain exam but have not yet been promoted to captain, brought an action to enjoin application of the Chicago Fire Department's "Captain Eligibility Rule" ("Captain Rule") to the battalion chief exam, which was scheduled to be given on August 13, 1988. The Captain Rule provides that "only Captains in the Fire Department shall be eligible for the examination of Battalion Chief in the Fire Department." Rule X, Section 5, City of Chicago Personnel Rules. Plaintiffs claimed that application of this rule to the upcoming exam will have an adverse impact upon minorities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. The district court enjoined the application of the Captain Rule only as it applied to black and Hispanic lieutenants who had taken and passed the captain examination. From this injunction, the City of Chicago and the Chicago Fire Fighters Union, Local 2, International Association of Fire Fighters, AFL-CIO (the Union is a party to this lawsuit because its collective bargaining agreement with the City of Chicago includes the Captain Rule) have appealed. For the following reasons, we find that the district court abused its discretion in granting plaintiffs' motion for a preliminary injunction.
 
 I.
 
 2
 The Fire Department of the City of Chicago is a para-military organization. It operates upon a chain-of-command basis, which means that firefighters progress through a series of ranks and each rank follows orders from the rank above it. Recruits enter the ranks as a firefighter or an engineer. Promotions from these two nonsupervisory ranks to the supervisory ranks (lieutenant, captain, and battalion chief) are made on the basis of two-day competitive exams. Personnel are only permitted to take the exam for the rank above which they are currently situated. For example, only lieutenants can take the captain exam and only captains can take the battalion chief exam. All those who pass the exam are automatically eligible for promotion to the next rank. From those eligible, promotion is usually made on the basis of seniority. (Minorities have been promoted out of order so that the Fire Department can meet its affirmative action goal.)
 
 
 3
 In May of 1988, plaintiffs filed a lawsuit against the City of Chicago, challenging one aspect of the Fire Department's system of promotion. Plaintiffs alleged that the Captain Rule had a disparate impact upon minorities in violation of Title VII (Count I) and that the Captain Rule violated the Order of Settlement in United States v. Albrecht, Nos. 73 C 661 and 80 C 1590 (N.D.Ill., March 31, 1980) (Count II). In this complaint, plaintiffs stated that they represent black and Hispanic lieutenants who, like the named plaintiffs, have taken and passed the captain exam but have not yet been promoted to captain. On July 1, 1988, plaintiffs filed a motion for a preliminary injunction. Plaintiffs sought an order allowing all lieutenants, not just those who had passed the captain exam, to take the battalion chief exam, scheduled for August 13, 1988.
 
 
 4
 The district court entered an order enjoining the application of the Captain Rule, but only with respect to those lieutenants who had passed the captain exam. The district court found that the Captain Rule adversely impacted upon minorities in two ways. First, the district court compared the percentages of minorities and whites eligible to take the battalion chief exam in light of the Captain Rule. By including all captains and lieutenants in the applicant pool, the court found that the eligibility rate of minorities was 73% of the eligibility rate of whites. Second, the court found that minorities were underrepresented in the upper ranks of the Fire Department compared to the percentage of minorities both in the work force and in the lower ranks of the Fire Department. The district court found that the Captain Rule was not justified as job-related because captains and lieutenants perform essentially the same duties. For these reasons, the district court concluded that plaintiffs had demonstrated a reasonable likelihood of success on the merits of their Title VII claim. In addition, the court concluded that plaintiffs would be prejudiced if they were not allowed to take the battalion chief exam. Because the last exam was given in 1978 and the City of Chicago has not set a date for the exam to follow the August 13th exam, the court found that plaintiffs might be denied the opportunity for promotion. For these reasons, the district court enjoined the application of the Captain Rule.
 
 II.
 
 5
 On appellate review of a district court order granting or denying a motion for preliminary injunction, we ask whether the district court abused its discretion. Shaffer v. Globe Protection, Inc., 721 F.2d 1121, 1123 (7th Cir.1983). In petitioning the court, plaintiffs must carry the burden of persuasion with respect to the four prerequisites of a preliminary injunction: (1) a reasonable likelihood of success on the merits; (2) irreparable injury and absence of an adequate remedy at law; (3) the threatened harm to the plaintiff outweighs the harm injunction may cause to the defendants; (4) that the granting of the injunction will not disserve the public interest. Id. (citations omitted).
 
 A.
 
 6
 In order to demonstrate a reasonable likelihood of success on the merits of their Title VII claim, plaintiffs must show that the Captain Rule determines eligibility for promotion to battalion chief "in a significantly discriminatory pattern." Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726, 53 L.Ed.2d 786 (1977); Albermarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). The statistical disparity between the percentage of minorities eligible to take the battalion chief exam and the percentage of whites eligible to take the exam under the Captain Rule must be "significant" or "substantial." See Griggs v. Duke Power Co., 401 U.S. 424, 426, 91 S.Ct. 849, 851, 28 L.Ed.2d 158 (1971) ("requirements operate to disqualify Negroes at a substantially higher rate than white applicants"); Albermarle, 422 U.S. at 425, 95 S.Ct. at 2375 (plaintiffs are required to show "that the tests in question select applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants"); Washington v. Davis, 426 U.S. 229, 246-47, 96 S.Ct. 2040, 2050-51, 48 L.Ed.2d 597 (1976) ("hiring and promotion practices disqualifying substantially disproportionate numbers of blacks"). The Supreme Court has stated that the significance of the statistical disparity should be determined on a "case-by-case approach." Watson v. Fort Worth Bank and Trust, --- U.S. ----, 108 S.Ct. 2777, 2789 n. 3, 101 L.Ed.2d 827 (1988). In this case, the district court concluded that the Equal Employment Opportunity Commission's (EEOC) Uniform Guidelines on Employee Selection Procedures, 29 C.F.R. Sec. 1609 (1987), was the appropriate benchmark by which to assess the impact of the Captain Rule. The Guidelines recommend a finding of disparate impact when a facially neutral standard results in a "selection rate for any sex, race or ethnic group which is less than four-fifths (or eighty percent) of the rate for the group with the highest selection rate." 29 C.F.R. Sec. 1607.4.[1]
 
 
 7
 To apply the EEOC's Guidelines, the district court must compare the number of people now eligible to take the test (in this case, the captains) with the number of people who would be eligible to take the test if the Captain Rule did not exist (the relevant labor pool). The district court assumed that, without the Captain Rule, all lieutenants would be eligible to take the exam. The district court found that, under the Captain Rule, the percentage of minorities eligible to take the exam (the number of black and Hispanic captains divided by the number of black and Hispanic captains and lieutenants) was 73% of the percentage of whites eligible to take the exam (the number of white captains divided by the number of white captains and lieutenants).
 
 
 8
 Factual determinations made by the trial court are reviewed under the "clearly erroneous" standard. The court's determination of the relevant labor pool, from which eligibility rate statistics are generated, is also "normally reviewable under the 'clearly erroneous' standard as an 'essentially factual matter within the special competence of the district court.' " Medina v. Reinhardt, 686 F.2d 997, 1004 (D.C.Cir.1982) (quoting Castanedo v. Pickard, 648 F.2d 989, 1003 (5th Cir.1981)). This court is not bound by that standard, however, " 'if the trial court bases its findings upon a mistaken impression of applicable legal principles.' " Id. (quoting Innwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 855 n. 15, 102 S.Ct. 2182, 2189 n. 15, 72 L.Ed.2d 606 (1982)).
 
 
 9
 As the Supreme Court has often repeated, "statistics based upon an applicant pool containing individuals lacking minimal qualifications for the job [are] of little probative value." Watson, 108 S.Ct. at 2790 (1988); see also Hazelwood School Dist. v. United States, 433 U.S. 299, 308 n. 13, 97 S.Ct. 2736, 2742, n. 13, 53 L.Ed.2d 768 ("When special qualifications are required to fill particular jobs comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value."). The district court should have considered whether the labor pool submitted by plaintiffs was composed of individuals qualified to become battalion chiefs. Instead, the district court apparently concluded that the relevant labor pool consisted of all lieutenants because the Captain Rule had a disparate impact on all lieutenants.
 
 
 10
 We find that a labor pool composed of all lieutenants is inappropriate because all lieutenants do not possess the qualifications necessary to become a battalion chief.[2] The lieutenant rank is the first rank in which a firefighter is allowed to supervise other firefighters, usually three or four, and exercise discretion in putting out fires, usually small fires such as kitchen fires. As a lieutenant's years of experience accumulate, he is entrusted with greater responsibility. When a firefighter attains the rank of battalion chief, he becomes the highest ranking supervisory officer in the Fire Department. Current battalion chiefs, on average, have served 6 years as a lieutenant and 8 years as a captain. The responsibilities of a battalion chief differ significantly from the responsibilities of a lieutenant, especially at the scene of a structural (building) fire. A structural fire is the most serious kind of blaze encountered by the Fire Department. The battalion chief is the commanding officer at the scene of structural fire, whereas a lieutenant is simply another fireman fighting the fire. The battalion chief must decide the tactics used to fight the fire and must supervise a minimum of 28 firefighters, 2 truck companies and 2 engine companies. His decisions affect the lives of both the public endangered by the fire and the firemen fighting the fire.
 
 
 11
 From our vantage point, we can draw only general conclusions about the qualifications necessary to become a battalion chief. One of those qualifications is extensive supervisory experience. Many lieutenants, especially those promoted within the last year and a half, possess minimal supervisory experience. We do not decide how much experience a lieutenant must have to be part of the relevant labor pool. The Fire Department's own Captain Rule is an implicit recognition by the Fire Department that the amount of experience necessary is flexible. The Captain Rule operates as a loose surrogate for a time-in-grade requirement, (a time-in-grade requirement means that a fireman must serve a certain number of years per rank before promotion to the next rank), ensuring that a firefighter has had substantial supervisory experience before reaching the highest rank in the Fire Department.
 
 
 12
 Although we do not know exactly how much experience is necessary to become a battalion chief, we do know that the relevant labor pool should consist of personnel who, at the least, possess substantial supervisory experience. Only two labor pools were presented to this court, one by the plaintiffs and the other by the defendants. The plaintiffs' pool consisted of all lieutenants. Although the eligibility rate generated from this pool demonstrated a disparate impact, this statistic has no probative value. The defendants' pool consisted of those lieutenants who passed the captain exam but have not yet been promoted to captain. Although all these lieutenants possess substantial supervisory experience, this pool generated an eligibility rate for minorities that is 83% the eligibility rate of whites, thus failing to demonstrate that the Captain Rule has a disparate impact under the EEOC Guidelines.
 
 
 13
 Plaintiffs attempt to save their case by arguing that they do not seek promotion--they only want to take the exam. They claim that no qualifications are needed to take an exam and thus the appropriate labor pool consists of all lieutenants. Their argument is disingenuous for two reasons. First of all, the proper focus is upon the qualifications for the job sought. See Watson, 108 S.Ct. at 2790. In addition, plaintiffs are well aware that any firefighter who passes the promotional exam is automatically eligible for promotion to the next rank. Under the Department's promotion system, there are only two prerequisites to promotion to battalion chief: attainment of the rank of captain and the ability to pass the battalion chief exam. If the Captain Rule is eliminated, then any lieutenant who passes the exam is eligible for promotion, regardless of experience.
 
 
 14
 Plaintiffs have failed to persuade us that the relevant labor pool consists of all lieutenants. On the basis of the only relevant evidence before this court (defendant's eligibility rate statistics), we must conclude that the Captain Rule does not have a disparate impact upon minorities.[3]
 
 B.
 
 15
 Besides plaintiffs' eligibility rate statistics, the district court also relied on plaintiffs' underrepresentation statistics in granting the preliminary injunction. The district court concluded that the plaintiffs would succeed on the merits of their Title VII disparate impact claim because minorities are severely underrepresented in the upper ranks of the Fire Department compared with the number of minorities in both the general population and the lower ranks of the Department. As of July 1, 1988, only 4.5% of the battalion chiefs, 10.4% of the captains, and 14.9% of the lieutenants in the Department were minorities. While these statistics are certainly not commendable, they are irrelevant to plaintiffs' claim that application of the Captain Rule will have a disparate impact upon minorities.
 
 
 16
 First of all, plaintiffs are challenging the prospective application of the Captain Rule. They allege that the rule will have a disparate impact upon minorities. However, any current underrepresentation must be a result of past practices. Plaintiffs cannot show causation between the current underrepresentation and the future application of the captain eligibility rule. Thus underrepresentation statistics are irrelevant to plaintiffs' claim.
 
 
 17
 Even if plaintiffs presented statistics on the number of minorities in the rank of battalion chief after the exam is given to captains, these statistics are still irrelevant to plaintiffs' claim. Underrepresentation statistics are usually used to prove a disparate treatment pattern and practice case. Evidence of a gross disparity between the percentage of minorities at different levels of an employer's work force may create the inference of intentional discrimination necessary to a plaintiff's disparate treatment case. Teamsters v. United States, 431 U.S. 324, 339-40 n. 20, 97 S.Ct. 1843, 1856-57 n. 20, 52 L.Ed.2d 396 (1977). In addition, some courts have allowed plaintiffs to use underrepresentation statistics to make a disparate impact challenge to subjective criteria for promotion, because of the difficulty in identifying the criteria which has a discriminatory impact. Atonio v. Wards Cove Packing Co., 810 F.2d 1477 (9th Cir.1987) (en banc); Shidaker v. Tisch, 833 F.2d 627 (7th Cir.1987); Griffin v. Carlin, 755 F.2d 1516 (11th Cir.1985); Fisher v. Proctor & Gamble Mfg. Co., 613 F.2d 527 (5th Cir.1980).
 
 
 18
 In its most recent Title VII opinion, the Supreme Court held that evidence generated by underrepresentation statistics cannot establish a prima facie case of disparate impact, thereby relegating the use of these statistics solely to the realm of disparate treatment cases. Watson, --- U.S. ----, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Although Watson involved a challenge to subjective criteria, its holding applies to all disparate impact cases, regardless of whether subjective or objective criteria are challenged:
 
 
 19
 [t]he plaintiff's burden in establishing a prima facie case (of disparate impact) goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged. Although this is relatively easy to do in challenges to standardized tests, it may sometimes be more difficult when subjective selection criteria are used.... Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for ... promotions because of their membership in a protected group.
 
 
 20
 Id. 108 S.Ct. at 2788-89.
 
 
 21
 Thus plaintiffs' only means of demonstrating a prima facie case of disparate impact is to identify the challenged criteria (which they did) and then prove causation (which they did not). Eligibility rate statistics, not underrepresentation statistics, encompass this causation requirement. As discussed in Part A, eligibility rate statistics demonstrated that the Captain Rule does not have a disparate impact upon minorities.
 
 C.
 
 22
 The district court also found that plaintiffs would suffer irreparable injury if they were not allowed to take the exam. The court reasoned that if plaintiffs did not succeed on the merits of their Title VII claim they might have to wait years before again having the opportunity to take the exam. The court's view is premised upon the fact that the battalion chief exam has been given infrequently in the past and that another exam has not been scheduled for the future. If the plaintiffs do succeed on the merits of their claim at trial, then the district court can order the City of Chicago to give plaintiffs the exam, or order the City of Chicago to set regularly scheduled exams. Although plaintiffs might suffer some delay in their promotion to battalion chief, this delay does not constitute irreparable injury. Ciechon v. City of Chicago, 634 F.2d 1055 (7th Cir.1980). Further, counsel for the City of Chicago, in addressing the potentially very serious problem presented here, represented at oral argument that the exam would not be delayed as in the past and would be held at regular intervals. Thus, plaintiffs have failed to carry their burden of persuasion with respect to another prerequisite for a preliminary injunction.
 
 III.
 
 23
 If a plaintiff fails to meet just one of the prerequisites for a preliminary injunction, the injunction must be denied. Shaffer, 721 F.2d at 1123 (citations omitted). In this case, the plaintiffs did not demonstrate a reasonable likelihood of success on the merits of their Title VII claim, nor did they demonstrate irreparable injury if the preliminary injunction was denied. For these reasons, the district court abused its discretion by granting the preliminary injunction.
 
 
 24
 The case is remanded with directions to the district court to dissolve the preliminary injunction and to proceed in the matter consistent with their directions and rulings of this opinion.
 
 
 25
 REVERSED AND REMANDED.
 
 
 
 [1]
 We do not unequivocally endorse the EEOC's Guidelines (otherwise known as the 80% Rule). The 80% Rule has been criticized on a number of technical grounds, see e.g., Boardman & Vining, The Role of Probative Statistics in Employment Discrimination Cases, 46 Law & Contemp.Prob., No. 4, pp. 189, 205-207 (1983); Shoben, Differential Pass-Fail Rates in Employment Testing: Statistical Proof under Title VII, 91 Harv.L.Rev. 793, 805-811 (1978). The 80% Rule is one starting point for a disparate impact analysis. In this case, plaintiffs did not make a showing under the 80% Rule. For this reason, we do not have to decide whether other statistics, in addition to the 80% Rule, are necessary to demonstrate a prima facie case of disparate impact
 
 
 [2]
 The district court implicitly recognized that all lieutenants are not qualified to become battalion chiefs. For this reason, the district court enjoined application of the Captain Rule only with respect to those lieutenants who passed the captain exam. The court's remedy is incorrect: if the Captain Rule has a disparate impact upon all lieutenants, then the Captain Rule should be enjoined with respect to all lieutenants. See Griggs, 401 U.S. at 436, 91 S.Ct. at 856 (If the challenged criteria has a disparate impact and cannot be justified as a business necessity, the appropriate remedy is to forbid the use of that criteria.) Assuming that the relevant labor pool consists of all lieutenants, then the appropriate remedy is to allow all lieutenants to take the exam
 
 
 [3]
 We do not need to reach the issue of whether the Captain Rule is job-related because plaintiffs have not demonstrated that the Captain rule has a disparate impact. See Griggs, 401 U.S. 424, 91 S.Ct. 849 (only after plaintiff has established a prima facie case of disparate impact does the burden shift to the defendant to prove the business necessity of the criteria)