Joseph G. CHAMBERS, Plaintiff,

v.

BRIGGS & STRATTON CORPORATION,
Defendant.

No. 94–C–1037.

United States District Court,
E.D. Wisconsin.

Oct. 3, 1994.

Davis, Cowell & Bowe by Richard G. McCracken, San Francisco, CA, Perry, Lerner & Quindel by Barbara Zack Quindel, Milwaukee, WI, for plaintiff.

Quarles & Brady by Michael J. Spector, Bruce R. Bauer, Milwaukee, WI, and Walter J. Skipper, Appleton, WI, for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiff, Joseph G. Chambers, a shareholder of 17 shares of stock in the defendant corporation, Briggs & Stratton Corporation, commenced this action for declaratory and injunctive relief on September 14, 1994. Along with his complaint, Mr. Chambers filed a "Motion for Temporary Restraining Order/Preliminary Injunction." At an oral hearing held on September 27,

1994, counsel for both sides addressed the plaintiff's motion which was treated by consent of the parties as one for a preliminary injunction.

Counsel for the parties have been informed by telephone on the morning of Friday, September 30, 1994, that the plaintiff's motion was granted in part and denied in part. The reasons for that determination are explained herein.

The defendant's annual meeting is scheduled to be held on October 19, 1994. On September 8, 1994, the defendant sent to shareholders a "Notice of Annual Meeting of Shareholders," a "Proxy Statement" and a form of proxy. One of the items of business identified in the notice and proxy statement is the election of directors. Three of the nine seats on the defendant's board of directors are now up for election.

The proxy statement identifies the three candidates put forth as nominees by the current directors, but it omits the name of William P. Dixon, who the plaintiff claims he nominated pursuant to Article II, Section 2.01 of the defendant's by-laws. Mr. Dixon is described by the plaintiff as a lawyer who has formerly served as commissioner of banking of Wisconsin, chief of staff to United States Senator Gary Hart, and United States alternative executive director to the World Bank.

Under Article II, Section 2.01 of the defendant's bylaws a shareholder must comply with the following requirements in order properly to nominate a candidate to the board of directors: (1) provide written notice to the secretary no later than 90 days before the anniversary date of the annual meeting of shareholders in the immediately preceding year; (2) represent in the notice that the nominator is a shareholder of record and will remain so throughout the date of the meeting; (3) state the nominator's name and address and the class and number of shares held by that person; (4) represent that the nominator intends to appear in person or by proxy at the meeting to make such nomination; (5) identify the name and address of the nominee and disclose the nature of any agreements or understandings, if any, between the nominator and the nominee; (6) provide the written consent of the nominee to serve as a director if so elected. It is undisputed that Mr. Chambers has complied with all six of these requirements.

Notwithstanding the fact that Mr. Dixon had been properly nominated in accordance with Article II, Section 2.01, his name was not included in the proxy statement or the form of proxy that was mailed to the shareholders by the defendant on September 8, 1994. Mr. Chambers alleges that this omission renders the proxy materials materially false and misleading under the regulations of the Securities and Exchange Commission ["SEC"], namely, 17 C.F.R. § 240.14a–9. As a result of such material omission, the plaintiff contends that the defendant may acquire a sufficient number of proxies such that Mr. Dixon will not gain election to the board of directors.

Subsequent to the filing of this lawsuit, the Wisconsin Coalition for Responsible Investment ["WCRI"], an entity financially backed by the United Paperworkers International Union Local 7232 ["Union"], disseminated proxy materials to some of the defendant's shareholders in support of Mr. Dixon's candidacy. Mr. Chambers is the treasurer of the Union. Mr. Chambers' counsel, Richard G. McCracken, also represents the WCRI.

In his motion for a preliminary injunction, the plaintiff seeks the following relief: (1) an order requiring the defendant to issue a supplemental proxy statement which cures the material omission contained therein to each shareholder who received the misleading information; (2) an order requiring the defendant to issue a new proxy card which includes Mr. Dixon's name as a nominee; and (3) an order invalidating any proxy or voting instruction card cast by any shareholder relating to the election of directors which were distributed to shareholders with the unlawful proxy material.

The court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 as the it arises out of the Securities Exchange Act of 1934.

## I.  LEGAL STANDARDS

A party seeking preliminary injunctive relief has the burden of establishing each

of the following prerequisites: (1) a reasonable likelihood of success on the merits; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that it has no adequate remedy at law; (4) that the threatened harm to the plaintiff if the preliminary injunction is not issued outweighs the harm an injunction may cause to the defendant if the injunction is issued; and (5) that the issuance of the injunction will not harm the public interest. *See Cox v. City of Chicago,* 868 F.2d 217, 219 (7th Cir.1989); *West Allis Memorial Hospital, Inc. v. Bowen,* 852 F.2d 251, 253 (7th Cir.1988). The decision whether to grant a motion for a preliminary injunction is within the discretion of the court. *See American Can Co. v. Mansukhani,* 742 F.2d 314, 321 (7th Cir. 1984).

A. *Likelihood of Success*

■ In order to obtain a preliminary injunction, the plaintiff has the burden to show "some likelihood of success" on its claim. *See Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 387 (7th Cir.1984). The plaintiff claims that the defendant's proxy materials violate Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), and the regulations promulgated thereunder in that they contain a material omission— namely, the materials do not disclose that Mr. Dixon is a candidate for director. 15 U.S.C. § 78n(a) provides:

> It shall be unlawful for any person, by the use of mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy ... in respect of any security....

The inclusion of any false or misleading statements in connection with a solicitation is proscribed by SEC Rule 14a–9(a), 17 C.F.R. § 240.14a–9 which states:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting ... containing any statement which, at the time and in the light of circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading....

Thus, in order to succeed on the merits of his claim, the plaintiff must establish that Mr. Dixon's candidacy for director was a material fact such that its omission in the proxy materials violated Rule 14a–9(a).

The United States Supreme Court has held that "an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." This standard

> does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of a substantial likelihood that, under all of the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.

*TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). The plaintiff argues that the above standard is met by the omission of Mr. Dixon's name in the defendant's proxy statement and form of proxy as a candidate for director because the omission makes the shareholders think that they have only three choices (the three candidates nominated by the board) for the three open seats on the board of directors.

■ In response, the defendant argues that Mr. Chambers has no likelihood of succeeding on the merits because the relief he seeks is contrary to the regulatory scheme embodied in the SEC's rules which place upon Mr. Chambers—not the company—the responsibility of disseminating information concerning opposition candidates. Specifical-

ly, the defendant contends that the following regulations support his position: (1) 17 C.F.R. § 240.14a–101; (2) 17 C.F.R. § 229.401(a)(5); and (3) 17 C.F.R. § 240.14a–8(c)(8).

17 C.F.R. § 240.14a–101 identifies the information to be included in a proxy statement. Note B of this section explains that

Where any item calls for information with respect to any matter to be acted upon at the meeting, such item need be answered in the registrant's soliciting material only with respect to *proposals* to be made by or on behalf of the registrant. (Emphasis added.)

If action is to be taken with respect to the election of directors, Item 7(b) of 17 C.F.R. § 240.14a–101, obligates the party making a solicitation to furnish "information required by Items 401, ... of Regulation S–K (§ 229.401, ...). Item 7 also provides that "If, ... the solicitation is made on behalf of persons *other than the registrant,* the information required need be furnished only as to nominees of the persons making the solicitation." (Emphasis added.)

Under 17 C.F.R. § 229.401(a), a proxy statement is to "[l]ist the names and ages of all directors of the registrant and all persons nominated or chosen by management to become directors; ...." The accompanying Instruction 5 to § 229.401(a) specifies that:

if the solicitation is made by persons *other than management,* information shall be given as to nominees of the persons making the solicitation. In all other instances, information shall be given as to directors and persons nominated for election or chosen by management. (Emphasis added.)

Contrary to the defendant's reading, I believe that these regulations place upon the *defendant* the obligation of disclosing in its proxy statement the existence of candidates who are not nominated by management. In instances involving the election of directors, persons other than management are obligated to disclose information only concerning their own nominees under Instruction 5 to § 229.401(a) and Item 7 of § 240.14a–101. However, this same limitation does not apply to solicitations by management. Rather, the express language of Instruction 5 to § 229.401(a) and Item 7 of § 240.14a–101 requires management to provide information as to (1) directors, (2) persons nominated for election; and (3) persons chosen by management. Had the SEC intended the same limitation to apply to solicitations by both management and persons other than management, it would not have distinguished between the two types of solicitations as it did in these regulations.

With respect to Note B of 17 C.F.R. § 240.14a–101, I find that rule to be inapplicable to the case at hand as that provision relates to *proposals* to be acted upon at the annual meeting and not specifically to the election of directors.

Accordingly, I reject the defendant's contention that the regulatory scheme developed by the SEC obligated Mr. Chambers—and not the company—to disclose Mr. Dixon's candidacy.

■ The defendant also maintains that the general principles of materiality under § 240.14a–9 establish that Mr. Chambers has no likelihood of succeeding on the merits of his claim. Both parties cite *Bertoglio v. Texas International Company,* 488 F.Supp. 630 (D.Del.1980), in support for their respective positions on the issue of the materiality of Mr. Dixon's candidacy.

While the holding in *Bertoglio* is not binding on this court, I believe it is instructive. In *Bertoglio,* a Delaware district court determined that a verbal notification to management from the opposition in an ensuing proxy contest that proxy materials would be filed with the SEC opposing certain incumbent directors did not "trigger the obligation to disclose the existence of a proxy contest that had not yet materialized." *Bertoglio,* 488 F.Supp. at 654. The district court reasoned that "prior to its written formalization, and resting solely on the incomplete oral notification ... opposition was not yet a 'fact' requiring disclosure." *Bertoglio,* 488 F.Supp. at 655 n. 21. The district court recognized, however, that the "materiality of actual opposition to the election of directors cannot be questioned." *Bertoglio,* 488 F.Supp. at 655 n. 21.

I agree with the district court's conclusion in *Bertoglio* that **actual** opposition to the election of directors is a material fact under 17 C.F.R. § 240.14a–9. This is so because there is a substantial likelihood that a reasonable shareholder would regard the existence of opposition to the board's nominees for director important in deciding how to vote. *See TSC Industries,* 426 U.S. at 449, 96 S.Ct. at 2132.

■ Here, unlike the situation in *Bertoglio,* opposition to the board of directors' candidates was a fact made known to the defendant well in advance of its initial solicitation on September 8, 1994. Mr. Chambers notified the defendant, in writing, and in compliance with the nominating procedure established under Article II, Section 2.01 of the defendant's bylaws of his nomination of Mr. Dixon. I find that upon receipt of Mr. Chambers' written notification of nomination, the defendant was required to disclose the nomination in its proxy statement. This conclusion is consistent with my determination that the regulatory scheme enacted by the SEC obligates management to disclose in its proxy statement the names of persons nominated for election. I decline to accept the defendant's position that *Bertoglio* requires a full-blown proxy contest as a prerequisite to activation of a company's obligation to disclose opposition.

For these reasons, I conclude that Mr. Chambers has a likelihood of succeeding on the merits of his claim that the defendant's failure to disclose Mr. Dixon's candidacy was a material omission under 17 C.F.R. § 240.14a–9.

■ The plaintiff also contends that the defendant's failure to include Mr. Dixon's name in its **form of proxy** (as distinguished from the proxy **statement**) was a material omission. Mr. Chambers cites no authority to support this proposition nor has the court found any.

A **form of proxy,** when executed by a shareholder, provides to the party soliciting the proxy the authority to act for the shareholder. In the context of an election contest, the soliciting party is seeking authority to vote the shareholder's shares in a manner favorable to the soliciting party. In other words, the soliciting party wants the shareholder's authority to vote for its own candidate; the soliciting party does not seek the authority to vote for the opposition's candidate. If the shareholder does not wish to give his authority to vote to a particular soliciting party, or if he desires to vote for an opposition candidate, he can either inform the soliciting party that he intends to withhold his authority to vote or he can simply refuse to execute the proxy form. In this case, there is no allegation that the defendant's **form of proxy** did not allow a shareholder to withhold his authority to vote for any of the defendant's candidates.

I find that the absence of the name of an opposition candidate on a soliciting party's **form of proxy** cannot, without more, be said to alter significantly the "total mix" of information available to shareholders. *See TSC Industries,* 426 U.S. at 449, 96 S.Ct. at 2132. Indeed, counsel for Mr. Chambers concedes as much, as evidenced by the fact that the **form of proxy** mailed to shareholders by his client, the WCRI, contains only the name of WCRI's candidate—Mr. Dixon—and omits any reference to the defendant's three nominees.

Accordingly, Mr. Chambers has not met his burden of demonstrating that he has some likelihood of succeeding on the merits of his claim that the omission of Mr. Dixon's name from the **form of proxy** was a material omission in violation of 17 C.F.R. § 240.14a–9.

### B. *Irreparable Harm/Adequate Remedy at Law*

■ Since the defendant's proxy statement contained a material omission, the shareholder vote will go forward on the basis of potentially misleading information unless the court grants the plaintiff's request for injunctive relief. The Supreme Court has recognized that "use of solicitation which is materially misleading poses the kind of irreparable injury to stockholders which can justify injunctive relief prior to a shareholder's meeting." *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 383, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970).

That the court could later undo the damage caused by an illegal proxy—by voiding the results of the election—is not an adequate alternative where, as here, the court can prevent in advance a shareholder vote to be taken on potentially misleading and incomplete information. Moreover, while a separate solicitation on Mr. Dixon's behalf could inform the shareholders of the existence of opposition to the defendant's nominees, that option does not excuse the defendant's failure to disclose this material fact. *See Gladwin v. Medfield Corp.*, 540 F.2d 1266, 1270 (5th Cir.1976); *Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 256 (3rd Cir.), *cert. denied*, 409 U.S. 874, 93 S.Ct. 120, 132, 34 L.Ed.2d 126 (1972).

The court is persuaded that the plaintiff has established that he would suffer irreparable harm if the injunction is not issued and that it has no adequate remedy at law.

### C. *Balance of Harms*

█ In balancing the harms, the court is to consider the threatened harm to the shareholders who are intended to be protected by § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a). *See Klaus v. Hi–Shear Corporation*, 528 F.2d 225, 232 (9th Cir. 1975). A court order granting a preliminary injunction will prevent a shareholder vote to be taken pursuant to potentially misleading and incomplete information, and the right of informed corporate suffrage will be protected by the order rather than denied.

The defendant maintains that the balance of harms does not favor Mr. Chambers. According to the defendant, the fact that Mr. Chambers waited until after the defendant had expended $100,000 in mailing out its proxy materials on September 8, 1994, to file the present action despite the fact that he knew no later than August 25, 1994, that the defendant was not including Mr. Dixon's name in its proxy statement demonstrates Mr. Chambers' "unclean hands." Hence, the defendant maintains that Mr. Chambers is not entitled to equitable relief.

While Mr. Chambers does not offer an explanation for his delay, I do not believe that the delay, standing alone, negates his entitlement to equitable relief. The delay

was not a lengthy one. Further, there is no evidence that the delay was based on Mr. Chambers' bad faith or was occasioned merely for the purpose of increasing the defendant's costs.

The defendant's contention that it will incur unnecessary additional costs if the injunction is issued is without merit in view of its admission that it is independently obligated to disseminate supplemental information in accordance with 17 C.F.R. § 240.14a–101 Items 4(b) and 5(b) and 17 C.F.R. § 240.14a–11 due to the recent distribution of proxy materials by WCRI. The defendant could include a supplemental statement curing its material omission along with the supplemental materials it is independently obligated to circulate under 17 C.F.R. § 240.14a–101 Items 4(b) and 5(b) and 17 C.F.R. § 240.14a–11 and thereby avoid additional costs.

The defendant also suggests that the issuance of an injunction would cause it to suffer great harm if the shareholders learn of the injunction as that information may influence the decisionmaking process of individual shareholders. The described harm is too speculative to be accorded any weight. The balance of harms favors the plaintiff.

### D. *Public Interest*

█ Given the overriding public interest in the full and accurate disclosure of information to shareholders of public corporations to ensure that a shareholder's vote is based upon accurate and complete information, I believe that this factor weighs in favor of granting a preliminary injunction. Allowing a shareholder vote based on incomplete and inaccurate information undermines the purpose underlying SEC Rule 14a–9.

### II. *RELIEF*

█ The plaintiff has demonstrated all of the prerequisites for preliminary injunctive relief in connection with the defendant's failure to identify Mr. Dixon as a candidate in its proxy statement. I have determined that this constituted a material omission under 17 C.F.R. § 240.14a–9. I conclude that the plaintiff's request for a preliminary injunction must be granted in part. I have consid-

ered the several forms of relief sought by the plaintiff in this action and have determined that the equitable course is to require the defendant to cure the material omission in its proxy *statement.* In addition, the defendant will be directed not to vote any *proxy* it solicited prior to October 1, 1994, at the annual meeting of its shareholders.

Consistent with the identification of its own nominees in the initial proxy statement, Briggs & Stratton Corporation's revised proxy statement should name Mr. Dixon and include the following information: (1) Mr. Dixon's age (50); (2) that he is presently a partner in the law firm of Davis, Miner, Barnhill & Galland, P.D. in Madison, Wisconsin; (3) that he served as the commissioner of banking of Wisconsin from 1983 to 1985; (4) that he served as chief of staff to United States Senator Gary Hart in 1987; and (5) that he served as the alternative executive director to the World Bank from 1977 to 1979.

I decline Mr. Chambers' invitation to require Briggs & Stratton Corporation to disseminate a new proxy *form* that identifies Mr. Dixon as a candidate. Mr. Chambers is entitled to have Briggs & Stratton Corporation correct its proxy *statement,* but the corporation does not have to provide its shareholders with the form which solicits an actual proxy for Mr. Chambers' nominee. In other words, after (or simultaneously with) the transmission of a corrected proxy statement, the defendant is free to submit to its shareholders a proxy form which invites shareholders to select the nominees favored by Briggs & Stratton Corporation. If Mr. Chambers chooses to seek proxies from shareholders, he has to do so at his own expense.

### III. SECURITY

■ Under Rule 65(c), Federal Rules of Civil Procedure,

> no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The parties have not addressed the issue of the plaintiff's obligation to post security under Rule 65(c). Nevertheless, in view of the mandatory nature of Rule 65(c), I do not believe that the court should ignore the rule. *See Reinders Brothers Inc. v. Rain Bird Eastern Sales Corp.,* 627 F.2d 44, 54 (7th Cir.1980) (citations omitted); *Nalco Chemical Co. v. Hydro Technologies, Inc.,* 795 F.Supp. 899, 901 (E.D.Wis.1992).

As a result of the injunction, the defendant will be required to issue and distribute a supplemental statement to its shareholders curing the relevant omission. The defendant estimates that such a mailing would cost $20,000. However, as previously noted, the defendant need not incur the $20,000 additional expense as a wholly added expense since it is already obligated to disseminate, independent of the preliminary injunction, other supplemental material due to the proxy contest launched by WCRI. There is no reason to believe that the information to be circulated by the defendant as a result of the issuance of the preliminary injunction will need to be included in a distribution separate from that already contemplated by the defendant. Thus, such expenses will not be considered in determining the amount of the bond to be posted.

The damages which may be incurred by Briggs & Stratton Corporation if the preliminary injunction is found, on appeal, to have been wrongfully issued are speculative. If Mr. Dixon obtained a seat on the board of directors as a result of the October 19, 1994, election, it is arguable that the results of the election would have to be voided and the defendant would be entitled to resolicit its shareholders. Presumably, the costs of another solicitation of this type would not exceed $100,000—the amount that the defendant has established that it expended in connection with the initial solicitation at issue in this case.

Nevertheless, in view of the speculative nature of the damages which would flow from a wrongfully issued injunction in this case, and in the absence of any other information from the parties, the court believes that a surety bond in the amount of $50,000 consti-

tutes an adequate security for the purposes of Rule 65(c). Accordingly, the court will order Mr. Chambers to post a surety bond in the amount of $50,000, with the clerk of court, no later than Tuesday, October 4, 1994. If Mr. Chambers fails to post the surety bond, the preliminary injunction issued pursuant to this decision and order will be vacated upon the defendant's motion.

### ORDER

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction be and hereby is granted, in part, and denied, in part.

IT IS ALSO ORDERED that Briggs & Stratton Corporation shall issue and disseminate a supplemental proxy statement which identifies William P. Dixon as a nominee for its board of directors to each of its shareholders who had been sent the defendant's initial proxy statement on September 8, 1994. The proxy statement shall also include a brief description of Mr. Dixon as outlined in this decision and order.

IT IS FURTHER ORDERED that no proxy solicited by Briggs & Stratton Corporation prior to October 1, 1994, shall be voted at the annual meeting of its shareholders scheduled for October 19, 1994.

IT IS FURTHER ORDERED that Mr. Chambers' motion to require the defendant to issue and disseminate a revised form of proxy to each shareholder who had been sent the initial solicitation by the defendant be and hereby is denied.

IT IS FURTHER ORDERED that the defendant be and hereby is required to post a surety bond in the amount of $50,000 with the clerk of court no later than Tuesday, October 4, 1994.