Robert W. RUDE and New Alliance
for the Future of Ciri, Inc.,
Appellants,

v.

COOK INLET REGION, INC., Appellee.

S–13823, S–13943.

Supreme Court of Alaska.

Dec. 21, 2012.

Fred W. Triem, Petersburg, for Appellants.

Jahna M. Lindemuth and Katherine E. Demarest, Dorsey & Whitney LLP, Anchorage, and William D. Temko, Munger, Tolles & Olson LLP, Los Angeles, California, for Appellee.

Before CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

In 2008 Robert Rude, then a sitting Cook Inlet Region, Inc. (CIRI) director, and three other candidates ran as an independent "New Alliance" slate for positions on the CIRI board of directors. Shortly before the election, CIRI filed suit, claiming that the New Alliance proxy materials contained materially misleading statements. Rude and his co-defendants counterclaimed, alleging that CIRI's election procedures were unfairly tilted toward the interests of the current board and that the directors had improperly refused to disclose shareholder and corporate information to Rude and the other New Alliance candidates. The superior court granted summary judgment on all claims and counterclaims in favor of CIRI. As a result, the New Alliance proxies were voided, and Rude was not re-elected to the board. Rude appeals the rulings both on CIRI's claims and

his counterclaims. Although Rude's claims are now technically moot, we address them insofar as they potentially affect prevailing party status. Because no issue of material fact exists as to the claims at issue and because CIRI is entitled to judgment as a matter of law, we affirm the superior court.

In a separate appeal, Rude challenges four other rulings of the superior court. First, he challenges the award of attorney's fees to CIRI. Second, he challenges the superior court's denial of his Rule 60(b) motion for relief from judgment. Third, he challenges the superior court's exclusion of exhibits filed with that motion. Finally, he challenges the superior court's dismissal of New Alliance as a party to this suit. Because the superior court did not abuse its discretion in any of these rulings, we affirm the superior court in all respects.

## II. FACTS AND PROCEEDINGS [1]

### A. Background

Cook Inlet Regional, Inc. (CIRI) is an Alaska Native Claims Settlement Act (ANCSA) corporation organized under Alaska law. It is governed by a 15–member board of directors, serving staggered three-year terms. Each year five director positions are up for election by the shareholders, and each year the board of directors recommends five candidates for the shareholders' vote and solicits proxies [2] for those five candidates. In addition to the board's recommended slate, other candidates often run.

### B. Board Endorsement And Formation Of New Alliance Slate

For the 2008 elections, Robert Rude, as well as Dorothy J. Anagick, Chris Kiana, and Mike Thomas, ran for seats on the board.[3] Rude was at that time an incumbent director whose term was set to expire at the annual

---

1. When reviewing a grant of summary judgment, we construe the facts in the light most favorable to the non-moving party. *See McCormick v. City of Dillingham,* 16 P.3d 735, 738 (Alaska 2001).

2. 3 Alaska Administrative Code (AAC) 08.365(12) (2012) defines proxy as "a written authorization which may take the form of a consent ... signed

by a shareholder ... giving another person power to vote with respect to the shares of the shareholder."

3. Anagick, Kiana, and Thomas were parties to the initial lawsuit in this case but have since been dismissed.

meeting at which elections would be held. The other three candidates were not incumbent directors. All four applied for board endorsement. At a March 2008 board meeting, the board selected five candidates, including Rude and Thomas, to be the board-recommended slate.[4] One week later, the board voted to reconsider its selections and selected a new slate, this time without Rude or Thomas.[5]

Under CIRI's rules, individuals who wish to run for the board of directors, but who are not included in the board-endorsed slate, may still be included in CIRI's proxy materials. Such individuals are listed, along with their photographs and background information, in CIRI's proxy statements;[6] their names are listed on the proxies; and their information and personal statements are included in the CIRI voter guide. In 2008 three "other candidates" opted to be included in CIRI's proxy materials. Rude, along with Thomas, Kiana, and Anagick, chose not to be included in CIRI's proxy materials, instead opting to run as a slate under the aegis of the New Alliance for the Future of CIRI, Inc. (New Alliance).

### C. Proxy Solicitation

On March 28, 2008, New Alliance began soliciting proxies on behalf of the four candidates and for a New Alliance proposal for a special dividend of $50 per share.[7] Around the same time, Rude sent an email to CIRI President and Chief Executive Officer Margie Brown requesting that CIRI include in its proxies either New Alliance's proposal for a special dividend or a statement of how the CIRI board would vote its proxies on such a proposal. Brown declined both requests. Brown also declined Rude's request for the email addresses of each CIRI shareholder.

Shortly after New Alliance sent its first proxy materials, CIRI filed a complaint with the Division of Banking, Securities and Corporations, alleging that New Alliance's proxy solicitations contained false and misleading statements concerning, most importantly, CIRI's alleged failure to pay adequate dividends in the past. While CIRI, New Alliance, and the Division communicated back and forth regarding CIRI's complaint to the Division,[8] New Alliance continued to solicit proxies through three additional mailings and to maintain a website explaining its campaign for the four candidates and for a special dividend.

These additional New Alliance mailings, as well as the New Alliance website, contained a number of statements which CIRI believed to be false or misleading. These statements, described in more detail below, concerned, among other things, management compensation, allegations that CIRI had "liquidated" or sold significant landholdings, shareholders' rights under Alaska law and ANCSA, CIRI's election procedures, and CIRI's dividend policy. In CIRI's words, the statements as a whole gave the false impression that "[a]lthough CIRI as a corporation has done well in earning a profit over the years, the CIRI Board majority (and management) have refused to share the corporation's success with

---

**4.** The board's initial slate included, in addition to Rude and Thomas, incumbent directors Roy Huhndorf, Penny Carty, and Patrick Marrs.

**5.** The revised slate included incumbent directors Penny Carty, Roy Huhndorf, Patrick Marrs, and B. Agnes Brown, as well as Katrina Jacuk.

**6.** A proxy statement is "a letter, publication, press release, advertisement . . . or other communication of any type which is made available to shareholders under circumstances reasonably calculated to result in the procurement, withholding, or revocation of a proxy." 3 AAC 08.365(14).

**7.** CIRI's annual shareholder meeting, at which elections would be held, was scheduled for June 7, 2008, with proxies due May 30.

**8.** The alleged misstatements in New Alliance's first mailer—and the procedural history of the dispute concerning those alleged misstatements—are not at issue in this appeal. Because CIRI initially pursued its complaints concerning alleged misrepresentations in New Alliance's first mailer with the Division of Banking, Securities and Corporations, the superior court found that those claims upon which the Division ruled must be pursued as an administrative appeal, and therefore converted that portion of CIRI's complaint into an administrative appeal. That appeal has apparently been stayed pending the resolution of this case.

the shareholders, instead keeping the vast majority of the net profits for themselves."

Meanwhile, starting in April 2008, CIRI began soliciting its own proxies. CIRI's first proxy solicitation included a proxy statement, including biographies of the board-endorsed candidates as well as three "other candidates." The proxy statement also included information about continuing directors (i.e., those not up for re-election) and corporate information, including information about the current board of directors and election procedures. The enclosed proxy included the names of the five board-recommended candidates, as well as the three "other candidates" and a blank line labeled "Write–In Candidates." The proxy did not include a space for shareholders to vote on New Alliance's proposed special dividend.

CIRI's second proxy mailing, mailed approximately one week after the first, included a voter guide with more in-depth information about the eight candidates on the proxy, along with CIRI's annual financial report, a flyer in support of the board-endorsed candidates, and another proxy form with the same information as the first. CIRI subsequently sent two more mailings that included proxy forms and information supporting its endorsed candidates. Throughout its proxy mailings, CIRI touted its "Early Bird Prizes"—cash prize drawings for shareholders who returned proxies "for any proxy holder or candidate" before the May 30 deadline.

## D. The Lawsuit And The Election

On June 5, two days before the scheduled shareholder meeting, CIRI filed suit against Rude, Anagick, Kiana, Thomas, and New Alliance, alleging that their proxy materials contained numerous false and misleading statements. The suit sought to void the New Alliance proxies.

Before the New Alliance candidates could respond, the shareholder meeting was held, and Rude and Thomas had the most votes to win election to the board. At the meeting, Thomas proposed the special dividend of $50 per share, but it was defeated when CIRI voted its proxies against the measure.

Following the election, the New Alliance candidates answered CIRI's complaint and filed numerous counterclaims. In its counterclaims, New Alliance [9] alleged generally that CIRI's election procedures were unfair because CIRI favored its slate of candidates over the New Alliance candidates. New Alliance also counterclaimed that CIRI's proxy forms were deficient because CIRI mailed the first forms before it distributed its financial report, CIRI failed to put enough slots on the proxies for write-in candidates, CIRI omitted the names of the New Alliance candidates from its proxy forms and materials, and CIRI failed to inform shareholders of the New Alliance special dividend proposal or give shareholders a way to vote on it. Rude also alleged that CIRI omitted his name from proxy materials despite the fact that he was a current director, and that this omission amounted to de facto removal from the board. Finally, New Alliance counterclaimed that CIRI improperly refused the New Alliance candidates' requests for lists of shareholders' names and phone numbers.[10]

CIRI moved for summary judgment on its claims against New Alliance. New Alliance moved for partial summary judgment on its counterclaims against CIRI, and CIRI filed a cross-motion for partial summary judgment on the counterclaims. The superior court granted summary judgment in favor of CIRI on both sets of claims.

## E. CIRI's Motion For Summary Judgment

In her ruling on CIRI's motion for summary judgment on the claims against New Alliance, pro tem Superior Court Judge Morgan Christen found that five sets of statements in New Alliance's proxy solicitation materials were misleading as a matter of law.

---

9. We refer to the New Alliance candidates collectively as New Alliance, except where more specificity is required.

10. In its counterclaims, styled as 56 separate claims, New Alliance suggested several other possible counterclaims which are not germane to this appeal and so are not described here.

First, the superior court found materially misleading New Alliance's claims that CIRI's senior managers' compensation had increased by 32% between 2006 and 2007 (as opposed to a 9.5% increase in shareholder dividends). The superior court reasoned that these claims were misleading because the New Alliance numbers had counted accruals under a long-term incentive plan that "were not fully vested and may never be paid." The superior court further found that these statements were material as a matter of law "because a reasonable shareholder would consider it important when deciding how to vote if CIRI management's pay increased by 32% in one year."

Second, the superior court found materially misleading New Alliance's claims that CIRI was being "liquidated" and that CIRI land entitlements had been reduced by 700,000 acres of surface and 1,000,000 acres of subsurface estate. The superior court determined that these statements were misleading because there was no evidence in the record to support New Alliance's contention that CIRI was being liquidated or selling off such significant landholdings. The superior court further found that New Alliance did not have a good-faith basis for such a belief. The superior court found that these statements were material as a matter of law "because a reasonable shareholder would of course consider it important when deciding how to vote if he/she understood that 700,000 acres of surface estate and 1,000,000 acres of subsurface estate had been liquidated without explanation."

Third, the superior court found materially misleading New Alliance's statement that

Section 2(b) of ANCSA says Natives shall have maximum participation in decisions affecting their rights and property.

We believe shareholder participation is lacking in our corporation.... Shareholders do not get to vote on: the sale of large ANCSA land and natural resource properties; large cash donations; the granting of CIRI owned stock to senior executives; political donations; large payments made to lobbyists and consultants; nor do they get to vote on legislation that would affect the rights or property. We want to change this!

The superior court concluded that these statements were misleading because they suggested that shareholders had a right to participate in CIRI's management decisions and that "the board [was] improperly denying shareholders' input into corporate governance." Instead, the superior court noted, "under Alaska law, the board of directors, not shareholders[,] has the right to make ... management and operational decisions." The superior court found that New Alliance's statements to the contrary were material because "[t]here is a substantial likelihood that a reasonable shareholder would consider the statement about shareholders' voting rights important in deciding how to vote."

Fourth, the superior court found materially misleading New Alliance's statements that "New Alliance candidates have to pay their own election expenses" and "[i]ndependent candidates ... have to pay their own campaign expenses which often cost an independent candidate tens of thousands of dollars and, if elected, they are not reimbursed their campaign expenses." The superior court concluded that these statements were misleading because the New Alliance candidates could have had some of their campaign expenses paid for if they had chosen to follow CIRI's procedures for being included in CIRI's proxy materials as "other candidates" and because CIRI did pay for some of the expenses for Rude to attend an informational meeting for shareholders in Washington. The superior court found that these statements were material as a matter of law because there was "a substantial likelihood that a reasonable shareholder would consider th[ese] statement[s] important in deciding how to vote ... [because they] perpetuate[d] the theme that minority board members are being treated unfairly by the majority."

Fifth, the superior court found materially misleading New Alliance's statements that "never again will a hardcore minority of 6 directors control our corporation." Although New Alliance claimed it was referring to one faction's de facto control of the board, the superior court concluded that this statement was misleading because "[a] minimum of

eight of the fifteen directors is required to command a majority." The superior court found that the statement was material as a matter of law because "there [was] a substantial likelihood that a reasonable shareholder would consider this statement important in deciding how to vote ... because it implies that a 'super minority' is somehow improperly controlling the corporation."

The superior court concluded that because the misrepresentations in New Alliance's proxy materials were sufficiently "egregious," the proxies given to New Alliance "must be declared void." Because the New Alliance proxies were declared void, Rude and Thomas, who had previously collected enough proxies to win election to the board of directors, were removed from their seats.

### F. New Alliance's Motion For Summary Judgment And CIRI's Cross–Motion

On the same day that it granted CIRI's motion for summary judgment, the superior court also granted CIRI's cross-motion for partial summary judgment on New Alliance's counterclaims and denied New Alliance's motion for partial summary judgment. Based on its understanding of New Alliance's motion, the superior court identified eight claims in the motions before it, of which only the first five are raised in this appeal. Those claims were whether CIRI violated Alaska securities law and common law proxy rules by:

(1) sending out its proxy statement and proxy to the shareholders before sending out its annual report;

(2) failing to comply with the proxy requirements under 3 AAC 08.335;

(3) failing to disclose material information on its proxy, including the names and information of all the candidates who were running for the board;

(4) failing to provide sufficient space on the proxy for the shareholders to write in the names of other candidates; [and]

(5) failing to disclose New Alliance's proposal for a special dividend and to provide a way for shareholders to vote on it; . . . .

As to the first issue, the superior court noted:

Alaska proxy regulation 3 AAC 08.345 provides:

(a) The solicitation of proxies on behalf of the board for an annual meeting must be preceded or accompanied by the annual report for the corporation's last fiscal year, *unless*

(1) the solicitation is made on behalf of the board before the annual report is available;

(2) solicitation is being made at the time in opposition to the board; and

(3) the board's proxy statement includes an undertaking to furnish the annual report to all shareholders being solicited at least 50 days before the date of the annual meeting. (Emphasis added by superior court.)

The superior court found that all three of these requirements had been met. The superior court noted that CIRI had filed a sworn statement that its financial statement was not yet ready when CIRI sent its first proxy mailing. The superior court found that, although New Alliance asserted that CIRI had the necessary information to publish its annual report before it solicited proxies, there was no evidence to support this, and the superior court therefore determined that CIRI had met the first prong. The superior court then noted that there was no dispute that CIRI had satisfied the second prong. Finally, the superior court noted that CIRI's initial proxy statement included an undertaking to furnish the annual report to shareholders at least 50 days before the annual meeting. Although New Alliance alleged that voters should not be asked to vote before they have information that a reasonable shareholder would view as significant in deciding how to vote, the superior court found that Alaska law specifically permitted CIRI to solicit proxies in response to New Alliance's solicitation and thus granted summary judgment to CIRI on this issue.

As to the second and third claims, New Alliance contended that CIRI's proxies should be voided because the proxy statement and voter guide failed to disclose the names of all candidates running for the board

and because they failed to disclose that Rude was a member of the board of directors running for re-election. But the superior court concluded that Alaska proxy regulation 3 AAC 08.345(b),[11] which governs proxy statements, did not require CIRI to do either and that CIRI had in fact provided the New Alliance candidates a way to be included in the proxy materials. Further, in its cross-motion, CIRI argued that its proxy fully met the requirements set out in 3 AAC 08.335,[12] and the superior court agreed. The superior court therefore granted summary judgment to CIRI on this claim.

On the same claim, New Alliance argued that CIRI violated two common law proxy rules—the Equal Prominence Rule and the Buried Facts Rule—by giving Rude less prominence than other directors in CIRI proxy materials. The superior court rejected this argument for two reasons. First, the court noted that "when the legislature enacts a statute to govern a matter previously addressed by the common law, the statute controls," and therefore the proxy regulations discussed above, not common law rules, controlled. Second, the court found that even if the common law rules were applicable, Rude was given the same treatment as other current directors in those parts of the proxy materials applying equally to all directors. And because he was not a continuing director, a board-endorsed candidate, or an "other candidate," he was not included in

those sections. The superior court therefore concluded that CIRI did not violate the Equal Prominence Rule or the Buried Facts Rule.

As to the fourth claim, New Alliance argued that the write-in section of CIRI's proxies was insufficient and misleading because it only contained one blank line following the term "Write–In Candidates." The superior court, though, found no legal authority for New Alliance's claim that proxies were required to have multiple write-in slots and further found that CIRI's use of the plural "candidates" would lead a reasonable voter to understand that it was permissible to write in more than one name. The superior court consequently found that CIRI's write-in section complied with Alaska law.

Finally, the superior court concluded that CIRI's proxy was not required to disclose New Alliance's proposal for a special dividend, nor to provide a way for shareholders to vote on it. The superior court concluded that the Alaska Securities Act required CIRI "to include a proposal in its proxy statement when the board intends to introduce a resolution to the shareholders" but that "[t]hird-party proposals which may or may not be introduced at an annual meeting are not required to be in a corporation's proxy and proxy statement." Accordingly, the court concluded that CIRI did not have to include New Alliance's proposal in its proxy materials.

---

11. 3 AAC 08.345 provides:
 (b) The solicitation of proxies on behalf of the board must be preceded or accompanied by a dated, written proxy statement including, but not limited to, the following:
 (1) if action is to be taken on the election of directors, a description of each *nominee of the board* who has consented to act if elected and of each *director whose term of office will continue* after the shareholders' meeting.... (Emphasis added.)

12. 3 AAC 08.335 provides:
 (c) The proxy must
 (1) indicate that the proxy is solicited on behalf of the board or, if solicited other than by the board, indicate the identity of the persons on whose behalf the solicitation is made;
 (2) provide a specifically designated blank space for dating the proxy; and
 (3) provide a means for the shareholder to specify by boxes a choice between approval or disapproval of each matter or group of related

matters identified in the proxy as intended to be acted upon, other than the election of directors.
 ....
 (e) A proxy that provides for the election of directors must
 (1) set out the names of the nominees for whom the proxy is solicited; and
 (2) clearly provide one of the following:
 (A) a box opposite the name of each nominee which may be marked to indicate that authority to vote for that nominee is withheld;
 (B) an instruction that the shareholder may withhold authority to vote for a nominee by lining through or otherwise striking out the name of that nominee;
 (C) a "ballot" type of selection in which the shareholder is permitted to award votes to selected nominees of the shareholder's choosing.

Although granting summary judgment to CIRI on CIRI's claims and on all of the counterclaims at issue in the cross-motions for partial summary judgment, the superior court issued a further order clarifying that it had dismissed "only those counterclaims that were the subject of the motion practice, not all of the defendants' counterclaims." Nevertheless, Anagick, Thomas, and Kiana entered a stipulation and order dismissing with prejudice all counterclaims against CIRI on behalf of themselves and New Alliance. Accordingly, Robert Rude was left as the only defendant and counterclaimant.

### G. CIRI's Final Motions For Dismissal And Summary Judgment

In August 2009, pro tem Superior Court Judge Peter G. Ashman, who had taken the case over from Judge Christen, ordered Rude to file a statement outlining any claims Rude had against CIRI which remained live. When Rude failed to respond, CIRI moved for dismissal, and Rude opposed. The superior court dismissed Rude's counterclaims for failure to comply with the court's August 2009 order. The superior court also found that CIRI was entitled to dismissal "on substantive grounds," noting that Judge Christen's order on partial summary judgment had decided all of Rude's claims relating to CIRI's election procedures and that Rude's remaining claims concerning his demand for shareholders' information were now moot because Rude had been removed as a director.

Rude moved for reconsideration of the dismissal, and the superior court, though noting that Rude had offered no explanation for his failure to respond to the August 2009 order, granted the motion, specifying that it would treat CIRI's motion to dismiss as a motion for summary judgment. The superior court limited briefing to what it found were the only four remaining issues, namely Rude's claims that (1) CIRI unfairly took sides in elections and improperly used its resources to support its candidates; (2) "CIRI's policies and practices are improperly intended to entrench incumbents"; (3) CIRI refused to give Rude shareholder addresses and email addresses, information to which he was entitled as a director; and (4) CIRI refused to give Rude other corporate information to which he was entitled as a director. The superior court gave CIRI an opportunity to supplement its motion as appropriate for summary judgment and for Rude to respond.

In January 2010, after hearing oral argument, Superior Court Judge Frank A. Pfiffner, who had taken over the case from Judge Ashman, issued an oral decision granting CIRI's motion for summary judgment on the remaining counterclaims.

As to the first two issues, that CIRI took sides and their election policies entrench incumbents, the superior court concluded that they had been disposed of by Judge Christen's earlier order on CIRI's cross-motion for partial summary judgment. The superior court determined that once summary judgment was granted in favor of CIRI regarding the specific claims of unfair election practices, the more general claims were unsupported and fell away. As to the second two issues, the superior court concluded that they were moot. The superior court noted that AS 10.06.450(d) did grant directors the right to certain corporate information but found that because Rude's proxies were invalid, he did not win the election and so was not a director.

With regard to a fifth issue, that Rude was entitled to certain corporate information as a shareholder, the superior court rejected this argument for a number of reasons. First, because this issue was outside the scope of the prior order outlining the remaining issues, the court found that Rude had abandoned the claim. Second, the superior court found that Rude had not made any requests in his capacity as a shareholder, but instead only in his capacity as a director. Finally, the superior court determined that even if Rude made requests as a shareholder, any requests did not meet the statutory requirement of shareholder requests for information because the requests did not state "with particularity the purpose of the inspection, identifying that it was a proper purpose and that the documents were connected to an otherwise proper purpose" as required under AS 10.06.430(b). Although the superior court noted that Judge Christen had refused to grant summary judgment as to several of

CIRI's claims that statements in the New Alliance proxy materials were misleading, the court, with CIRI's agreement, concluded that there were no issues remaining and ordered CIRI to draft a final judgment. Rude moved for reconsideration, and it was denied.

### H. Post–Judgment Proceedings

The superior court ordered Rude to pay $43,773.80 in attorney's fees and $5,441.14 in costs, for a total monetary judgment of $49,214.94.

After filing a notice of appeal, Rude filed a motion for relief from judgment. Rude attached to his motion over 30 new exhibits. CIRI opposed the motion and moved to strike the new exhibits. The superior court granted CIRI's motion to strike the new exhibits, finding that they were irrelevant to the motion, untimely, and unauthenticated. The superior court also denied Rude's motion for relief from judgment, ruling that Rude's motion was not based on a mistake of law or newly discovered evidence as required by Alaska Civil Rule 60(b), but was rather a rehash of his earlier arguments and an attempt to introduce evidence that was unauthenticated and that had been available for timely introduction during the litigation.

Rude has filed two appeals. In the first he appeals many of the substantive matters decided in the superior court's three orders on summary judgment. In the second he challenges four procedural matters: (1) the superior court's award of costs and attorney's fees to CIRI; (2) the superior court's denial of Rude's Rule 60(b) motion for relief from judgment; (3) the superior court's order striking exhibits attached to the 60(b) motion; and (4) the superior court's entry of a stipulation dismissing the New Alliance corporation as a party.

## III. STANDARDS OF REVIEW

We review grants of summary judgment de novo.[13] In reviewing a grant of summary judgment, we will "determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts."[14] "Mere assertions of fact in pleadings and memoranda are insufficient for denial of a motion for summary judgment."[15] We "may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."[16]

We apply "the deferential 'reasonable basis' standard of review ... where a question of law implicates [an] agency's expertise as to complex matters or as to the formulation of fundamental policy."[17] "[W]here an agency interprets its own regulation ... a deferential standard of review properly recognizes that the agency is best able to discern its intent in promulgating the regulation at issue."[18]

We will not reverse an award of attorney's fees,[19] a denial of a Rule 60(b) motion for relief from judgment,[20] a decision regarding the admissibility of evidence,[21] or a superior court's entry of a voluntary dismissal[22] absent an abuse of discretion. "An abuse of discretion exists when we are left with a definite and firm conviction that an

13. *See Yost v. State, Div. of Corps., Bus. & Prof'l Licensing*, 234 P.3d 1264, 1272 (Alaska 2010).

14. *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

15. *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n. 32 (Alaska 1978).

16. *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006).

17. *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982).

18. *Id.*

19. *See Valdez Fisheries Dev. Ass'n., Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 672 (Alaska 2002).

20. *See Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2011).

21. *See Carroll v. Carroll*, 903 P.2d 579, 582 n. 7 (Alaska 1995).

22. *See Dome Labs. v. Farrell*, 599 P.2d 152, 155–56 (Alaska 1979).

error has been made."[23]

## IV. DISCUSSION

These two appeals encompass a total of 12 primary issues. Rude first brings six claims relating to CIRI's conduct of the election for the board of directors. The next two claims concern CIRI's refusal to turn over to Rude information about CIRI shareholders. Rude then argues that the superior court erred in granting summary judgment on CIRI's claims that the New Alliance proxy materials contained material misrepresentations. In his second appeal, Rude argues that the superior court erred by awarding CIRI attorney's fees. Finally, Rude brings three procedural claims. We address these arguments in turn.

### A. Rude's Counterclaims

**1. Most of Rude's claims are technically moot and reviewable only for the purpose of determining prevailing party status for an award of attorney's fees.**

CIRI argues that nearly all of Rude's election claims are moot because, owing to numerous delays in this case, the seats up for election in 2008 have since come up for election again. Consequently, Rude's requested remedy—that CIRI's proxies for the 2008 election be voided—can no longer provide him any relief.

"A claim is moot where ... it has lost its character as a present, live controversy, that is, where a party bringing the action would not be entitled to any relief even if he or she prevailed."[24] In *O'Callaghan v. State*, the appellant sought to overturn the 1990 governor's election and have the State hold a new election.[25] By the time the appeal reached this court, the terms of office of the candidates elected in the 1990 election had already run, and we therefore held that the appeal was moot.[26]

As we have recognized, though, an exception to the mootness doctrine exists through which technically moot claims can be reviewed if there is a strong public interest reason for doing so. In order to determine whether the public interest exception applies, we ask

(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.[27]

In Rude's case, because CIRI holds elections every year, his claims are at least capable of repetition. Further, we may assume without deciding that the public interest in open, fully informed corporate democracy is so great as to justify overriding the mootness doctrine. However, in this case the public interest doctrine does not apply because, like in *O'Callaghan*, "a timely election challenge [was] possible."[28]

The superior court granted summary judgment to CIRI on most of Rude's election counterclaims in May 2009. On July 17, 2009, the superior court held a hearing concerning the issues remaining following Judge Christen's initial summary judgment orders; Rude did not appear at this hearing, nor did he respond to the superior court's order compelling him to identify remaining counterclaims. Accordingly, CIRI filed a motion to dismiss in October 2009. Only then did Rude respond, but the superior court dismissed Rude's remaining claims in November 2009. Rude then filed a motion for reconsideration, and the superior court agreed to convert the motion to dismiss into a motion for summary judgment and give the parties time to brief the matter appropriately. On January 21, 2010, the superior court granted summary judgment on Rude's remaining counterclaims and a final judgment

**23.** *Marsingill v. O'Malley*, 128 P.3d 151, 155 (Alaska 2006).

**24.** *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007) (internal quotation marks and citations omitted).

**25.** 920 P.2d 1387 (Alaska 1996).

**26.** *Id.* at 1388–89.

**27.** *Id.* at 1389 (quoting *Peloza v. Freas*, 871 P.2d 687, 688 (Alaska 1994)).

**28.** *Id.*

was entered on February 25. On March 26, 2010—when the candidates elected at the 2008 shareholder meeting still had more than one full year left in their terms—Rude filed a statement of points on appeal. However, Rude filed repeated motions requesting more time, many of which were filed after due dates had run. He ultimately filed his corrected brief on July 13, 2011, ten months after his brief was initially due and more than a month after the 2011 CIRI shareholders meeting. In short, Rude had ample time to contest the election results, and so the second prong of the public interest exception does not apply.[29]

Nonetheless, we have held that "where the outcome of an otherwise moot claim may 'change[ ] the status of the prevailing party and thus an award of attorneys' fees,' we reach the merits of that claim."[30] Because in this case there has been an entry of judgment against Rude consisting of attorney's fees and costs, we are bound to consider the merits of Rude's claims, though the only relief he seeks (aside from setting aside attorney's fees in his second appeal) is that

CIRI's proxies be voided, his own counted, and the 2008 election results recounted.[31] We review Rude's claims, however, only to the extent that they may change the prevailing party determination.[32]

## 2. CIRI was not required to list the names of the New Alliance candidates in its proxy materials.

Rude first argues that the superior court erred by determining that CIRI was not obligated to include the names of the New Alliance candidates in its proxy materials. Rude points to two federal cases from outside Alaska for the proposition that corporations bear the obligation to use their proxy materials to inform shareholders of non-board-endorsed candidates that the board knows to be running.[33] He argues that by failing to disclose the names of the opposition candidates the board gave the impression that its candidates were unopposed and discouraged shareholders from voting.

CIRI responds that Alaska law does not require CIRI to list non-board-recommended candidates in its proxy materials. CIRI also

---

**29.** See *Mullins v. Local Boundary Comm'n*, 226 P.3d 1012, 1019 (Alaska 2010) (comparing "the time it takes to bring the appeal with the time it takes for the appeal to become moot," and determining that the second prong of the public interest exception was not met because the time between the filing of a petition for incorporation and the incorporation election was not "insufficient to permit judicial review") (internal quotations and citations omitted).

**30.** *Gold Country Estates Pres. Grp., Inc. v. Fairbanks N. Star Borough*, 270 P.3d 787, 795 (Alaska 2012) (quoting *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 777 (Alaska 2001); *see also Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 461 (Alaska 2010); *Lamoureaux v. Totem Ocean Trailer Express, Inc.*, 651 P.2d 839, 840 n. 1 (Alaska 1982).

**31.** In one line in his brief, without any citation to any legal authority, Rude asserts that he is owed either two or three years of unpaid director's fees for the time he was unfairly denied a seat on the board (pursuant to the superior court's order voiding Rude's proxies). However, "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991). Rude also suggests, in a single clause in his brief and without any legal citation, that a further remedy is "to enjoin CIRI's inequitable election

practices from continuation." Again, such a cursory treatment of an issue is not considered on appeal. Finally, Rude argues for the first time on appeal that an appropriate remedy "is to remove the entrenched directors and officers who have devised and implemented these schemes intended to maintain their grip on corporate control." But we have said we "will not address for the first time on appeal an issue the appellant failed to raise below," and so this claim for relief is waived. *Alaska State Emps. Ass'n/AFSCME Local 52, AFL–CIO v. State*, 74 P.3d 881, 886 (Alaska 2003). In his second appeal, aside from seeking to have his attorney's fees award reversed, Rude seeks to have the case remanded back to the superior court to have his Rule 60(b) motion reconsidered, to have his previously denied exhibits admitted, and to have New Alliance reinstated as a party. But these remedies all relate to a claim that is now moot and so will not be considered by this court.

**32.** See *Schweitzer v. Salamatof Air Park Subdivision Owners, Inc.*, 278 P.3d 1267, 1273 (Alaska 2012) ("To determine the prevailing party and resolve the attorney's fees issue we need only review the superior court's holding on what we determine is the 'main issue.' ").

**33.** *Chambers v. Briggs & Stratton Corp.*, 863 F.Supp. 900 (E.D.Wis.1994); *Bertoglio v. Texas Intern. Co.*, 488 F.Supp. 630 (D.Del.1980).

points out that under its election procedures Rude had the opportunity to appear in CIRI's proxy materials but that Rude declined the offer and "cannot now complain that his candidacy was not included."

Rude relies primarily on *Chambers v. Briggs & Stratton*,[34] a case from the Eastern District of Wisconsin, for his claim that CIRI was obligated to include the names of the New Alliance directors in its proxy materials. In *Chambers*, a corporation omitted the name of a duly nominated candidate for the board of directors from its proxy materials, and a shareholder sued, claiming the omission of the opposition candidate's information was a material misrepresentation.[35] The court, interpreting the Federal Securities Exchange Act, agreed, finding that "opposition to the election of directors is a material fact" because "there is a substantial likelihood that a reasonable shareholder would regard the existence of opposition to the board's nominees for director important in deciding how to vote."[36] CIRI replies that this case is not binding in Alaska and that "Alaska's proxy regulations specifically address what must be included in board solicitations" and do not require the inclusion of non-board-nominated candidates. The superior court agreed, granting summary judgment to CIRI.

As CIRI and the superior court point out, 3 AAC 08.345, which governs the contents of proxy materials, provides:

(b) The solicitation of proxies on behalf of the board must be preceded or accompanied by a dated, written proxy statement including, but not limited to, the following:

(1) if action is to be taken on the election of directors, a description of each nominee of the board who has consented to act if elected and of each director whose term of office will continue after the shareholders' meeting.

3 AAC 08.335, which governs the contents of proxies, provides:

(c) The proxy must

(1) indicate that the proxy is solicited on behalf of the board or, if solicited other than by the board, indicate the identity of the persons on whose behalf the solicitation is made;

(2) provide a specifically designated blank space for dating the proxy; and

(3) provide a means for the shareholder to specify by boxes a choice between approval or disapproval of each matter or group of related matters identified in the proxy as intended to be acted upon, other than the election of directors.

. . . .

(e) A proxy that provides for the election of directors must

(1) set out the names of the nominees for whom the proxy is solicited; and

(2) clearly provide one of the following:

(A) a box opposite the name of each nominee which may be marked to indicate that authority to vote for that nominee is withheld;

(B) an instruction that the shareholder may withhold authority to vote for a nominee by lining through or otherwise striking out the name of that nominee;

(C) a "ballot" type of selection in which the shareholder is permitted to award votes to selected nominees of the shareholder's choosing.

The superior court is correct that 3 AAC 08.335, the section governing the proxies themselves, does not require CIRI to include non-board-nominated candidates like Rude in its proxies. Subsection (e)(1) specifically requires that the proxy must "set out the names *of the nominees for whom the proxy is solicited.*" (Emphasis added.) The rule contemplates that each proxy solicitor will only solicit its own proxies, only requiring a solicitor to include its own candidates. Accordingly, CIRI should not be held to an obligation to solicit proxies on behalf of others.

As to 3 AAC 08.345, the section governing the contents of proxy statements, we addressed this exact issue last year and held that corporations are not required to include

**34.** 863 F.Supp. 900 (E.D.Wis.1994).

**35.** *Id.* at 902.

**36.** *Id.* at 905.

in their proxy statements the names of non-board-nominated candidates or non-continuing directors.[37]

Further, as both CIRI and the superior court note, CIRI in fact provided Rude and the other New Alliance candidates an opportunity to be included in the proxy statement, but they chose not to be included. Rude now argues that they should have been included despite this previous refusal. But surely CIRI cannot be required to solicit a candidate's proxies against that candidate's will. The superior court did not err by granting summary judgment to CIRI on this point.

### 3. CIRI's selection of board-recommended candidates was not improper.

■■■ Rude next argues that it was improper for the board to hold "a closed primary election" in which a board-endorsed slate was chosen without shareholder participation. To support his argument he cites to cases concluding that shareholders must be allowed to nominate candidates to oppose board-nominated slates.[38] Here Rude and the New Alliance candidates were able to do just that, running as an independent slate opposed to CIRI's board-nominated candidates. Rude cites no authority for the proposition that it is impermissible for a corporate board to recommend a slate, even while allowing an opportunity for other candidates to be nominated and to run. Indeed, Alaska's proxy regulations, noting that a proxy may be solicited "on behalf of the board or ... solicited other than by the board,"[39] seem to assume that boards will be soliciting proxies for their recommended candidates. CIRI's selection of a board-recommended slate was not impermissible.

### 4. CIRI did not improperly remove Rude from the board of directors.

Rude next argues that CIRI improperly removed him as a director by "taking him off the list of its current directors" in its statement. This, he argues, violated CIRI's duty to disclose the names of its directors, exceeded CIRI's powers to punish a sitting director, violated common law rules of disclosure and candor, violated common law proxy rules, and amounted to common law fraud.[40]

The superior court correctly granted summary judgment on these claims. The fundamental flaw in Rude's contention is that his name was not *removed* from CIRI's proxy statement. As discussed above, CIRI was not required to list Rude as a candidate in its proxy statement, and so the omission of his name as a candidate cannot be considered removal.[41] The proxy statement did, though, contain numerous sections in which all current directors were listed, and in each of those sections Rude's name was included with equal prominence as his fellow directors. In the section discussing directors' compensation, Rude's name was listed in alphabetical order. In the section discussing committee assignments, Rude is listed as a member of two committees. In short, Rude's name was not omitted from CIRI's proxy materials, and so summary judgment was appropriate on this point.

### 5. CIRI did not impermissibly solicit proxies before distributing its annual report.

■■■ Rude next argues that the superior court erred when it concluded that "[u]nder

---

**37.** *Henrichs v. Chugach Alaska Corp.*, 260 P.3d 1036, 1044 (Alaska 2011) ("Chugach was not required to include the former directors in the proxy statement because the board did not nominate them. And although Henrichs and Tabios were incumbent directors, Chugach was not required to include their names because their terms were scheduled to expire and therefore would not 'continue after the shareholders' meeting.' ").

**38.** *Goldstein v. Lincoln Nat'l Convertible Sec. Fund, Inc.*, 140 F.Supp.2d 424 (E.D.Pa.2001), *vacated in part, appeal dismissed by Goldstein v. Lincoln Nat'l Convertible Sec. Fund, Inc.*, 2003 WL 1846095 (3d Cir. Apr. 2, 2003); *Durkin v.*

*Nat'l Bank of Olyphant*, 772 F.2d 55 (3d Cir. 1985).

**39.** 3 AAC 08.335(c)(1).

**40.** Rude never argued common law fraud in the superior court, and we accordingly do not consider this argument. *See Alaska State Emps. Ass'n/AFSCME Local 52, AFL–CIO v. State*, 74 P.3d 881, 886 (Alaska 2003) ("We will not address for the first time on appeal an issue the appellant failed to raise below.").

**41.** *See supra* Part IV.A.2.

these circumstances, the law permits CIRI to solicit proxies before issuing its 2007 annual [financial] report." CIRI's proxy statement and first proxy were mailed approximately April 11, 2008. About one week later, CIRI sent out a second mailer including a proxy and the corporation's 2007 annual report. According to Rude, CIRI violated both common law disclosure rules and Alaska proxy regulations when it solicited proxies before informing shareholders about the financial health of the corporation under its current directors. To exacerbate the problem, Rude argues, CIRI "seduc[ed]" shareholders to vote before they had the financial report by offering "Early–Bird Prizes" for the prompt return of proxies.

The superior court rejected this argument, relying on 3 AAC 08.345(a). That regulation provides:

> (a) The solicitation of proxies on behalf of the board for an annual meeting must be preceded or accompanied by the annual report for the corporation's last fiscal year, *unless*
>
> (1) the solicitation is made on behalf of the board before the annual report is available;
>
> (2) solicitation is being made at the time in opposition to the board; and
>
> (3) the board's proxy statement includes an undertaking to furnish the annual report to all shareholders being solicited at least 50 days before the date of the annual meeting. (Emphasis added.)

The regulation provides an exception to the general rule that a proxy solicitation cannot precede a financial report. Because there was no dispute as to the second and third prongs of the exception, the superior court focused on the first. Rude argued, as he does now, that the first prong was not satisfied because, although it is undisputed that the financial report was not available when CIRI sent out its first proxy mailing, CIRI had all the essential information it needed to compile the report well before its first mailing. The superior court correctly rejected this argument.

CIRI Vice President Barbara Donatelli filed a sworn affidavit stating that the report was not available when CIRI sent out its first mailing. Rude counters that CIRI received its independent auditor's report on March 21, 2008, and therefore had enough time to produce its final report before mailing its first proxy solicitation on approximately April 11. But Rude's bare assertion that CIRI could have completed its financial report within approximately 20 days of the completion of the independent auditor's report does not create a genuine issue of material fact. Summary judgment was therefore properly granted on this point.

**6. CIRI was not required to include information about New Alliance's proposed special dividend in its proxy materials.**

 Rude next argues that the trial court erred in granting summary judgment on his claim that CIRI was required to disclose the New Alliance proposal for a special dividend and to allow shareholders a way to vote on it. Several interlocking provisions of the Alaska proxy regulations govern whether board proxy materials must provide shareholders with a way to vote on proposals. As a general matter, 3 AAC 08.335(d) provides that proxies can confer authority on proxy holders to vote on proposals only "if the proxy discloses how the shares represented by the proxy will be voted in each case." In some cases, though, proxies may grant proxy holders discretionary authority to vote on certain matters. 3 AAC 08.335(f) provides two potentially relevant circumstances in which discretionary authority may be granted.

First, 3 AAC 08.335(f)(1) allows for proxies to confer on their holders discretionary authority to vote with respect to "matters which the persons making the solicitation do not know, a reasonable time before the solicitation, are to be presented at the meeting." CIRI argues, and the superior court agreed, that this exception applies because "although Rude and the New Alliance had expressed their intention to include the proposal, CIRI could not know whether that plan would indeed be carried out, nor could CIRI know the language that would be used."

Second, 3 AAC 08.335(f)(4) allows for proxies to confer on their holders discretionary

authority to vote with respect to "a proposal omitted from the proxy statement and proxy, if solicited for an annual meeting by participants other than the board." Relatedly, 3 AAC 08.345(b)(15) requires that proxy statements include, "for each matter which is to be submitted to a vote of the shareholders, other than the election of directors, a description of the proposal and a statement of the vote required for its approval." CIRI argues that 3 AAC 08.345(b)(15) applies "only to those [proposals] *the board itself* intends to present for a vote." (Emphasis in original.) Accordingly, argues CIRI, 3 AAC 08.335(f)(4) "expressly permits solicitation of discretionary authority to vote on non-board proposals."

We will focus on the second exception.[42] Whether the second exception applies hinges on whether 3 AAC 08.345(b)(15) applies only to board proposals or to all proposals. If the clause "for each matter which is to be submitted to a vote of the shareholders" implicitly means "submitted *by the board* to a vote of the shareholders," then 3 AAC 08.335(f)(4) excepts CIRI from having to include the proposal in its proxies. If not, then CIRI was not entitled to discretionary authority on the proposal under this exception.

When interpreting an agency regulation for which an agency has provided its own interpretation, we apply "a deferential standard of review [that] properly recognizes that the agency is best able to discern its intent in promulgating the regulation at issue."[43] In its motion for partial summary judgment, CIRI attached a 2004 letter from a Division of Banking and Securities examiner explaining that the Division's interpretation of the regulation was the same as CIRI's. In that letter, written in response to a complaint that CIRI was refusing to include a proposed floor resolution in its proxy materials, Securities Examiner Ellen Buchanan stated that "[t]he regulations do not require a corporation to include a sharehold-er's resolutions in its proxy statement and proxy." She explained:

> The proxy regulations at 3 AAC 08.335(f)(4) state that a proxy may confer discretionary authority to vote on proposals omitted from the proxy statement and proxy materials if solicited for an annual meeting by participants other than the board. We do not agree ... that the intent of this section is to allow discretion only if the promoters of it refuse to allow the proposal's inclusion in the management proxy. We do not find that CIRI's intent to use discretion to vote on [shareholder] proposals is a violation of the regulations.

Rude proposes no alternative interpretation of the regulation except to assert that his interpretation is correct. He makes no argument that the Division's interpretation of the regulation lacks a rational basis. Because an agency is best able to interpret the intent of its regulations,[44] Rude's failure to articulate how the agency's facially defensible interpretation is incorrect means that the agency interpretation controls. CIRI was not required to include the special dividend proposal in its proxy materials, and summary judgment on this point was therefore appropriate.

### 7. CIRI's proxy forms did not improperly contain too few slots for write-in candidates.

 Finally, in the last of his election-fairness claims, Rude argues the superior court should have invalidated CIRI's proxies because they "did not contain five ... blanks for write-in candidates, but only one." According to Rude, this implied that a voter could only vote for one write-in candidate. As the superior court correctly noted, however, Rude provides no authority

> to support [his] assertion that a proxy must provide space for shareholders to write in the names of other candidates. Nor does the format misrepresent the options available to the shareholder casting a ballot.... [A] reasonable shareholder

---

**42.** We conclude that the first exception applies because CIRI, though it had general notice of New Alliance's intent, could not have known if the plan would be completed or what language New Alliance would use in the proposal. *See* 3 AAC 08.335(f)(1).

**43.** *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992) (internal quotation marks omitted).

**44.** *Id.*

would understand [CIRI's use of the term] 'write-in candidates' to mean that a shareholder is permitted to write-in more than one candidate.

Because the regulations governing proxies do not require spaces for write-in candidates, and because even if such a requirement were inferred, CIRI's use of the plural "candidates" conveys that more than one name may be written in, the superior court correctly granted summary judgment on this point.

### 8. Rude's claim that CIRI impermissibly refused to disclose information to which he was entitled as a director is moot.

Rude's next two claims argue that CIRI improperly denied him access to corporate information to which he was entitled. In the first claim, Rude argues that he was entitled to the information by virtue of his position as a director. In the second, Rude argues that he was entitled to the information by virtue of his position as a shareholder.

Rude argues that he was denied access to two types of corporate information to which he was absolutely entitled as a director. First, he argues that CIRI wrongfully refused to disclose shareholder email addresses and phone numbers. Second, he argues that CIRI wrongfully refused to disclose "information related to the management of the corporation." Rude argues that as a director he had an absolute right to this information under AS 10.06.450(d).[45]

CIRI argues, and the superior court found, that Rude's claim as a director is moot because once he lost his seat as a director he was no longer entitled to this information.

Therefore, even if CIRI's denial was improper, Rude no longer has a right to any relief. Rude concedes mootness but argues that the public interest exception applies to his claims. But, in an unpublished decision, we addressed the public interest exception in this context and determined that it does not apply because claims like this would not "continually evade review."[46]

 Unlike the other claims at issue in this appeal that are technically moot though nonetheless justiciable, Rude's claim that he was denied corporate information has no bearing on his status as a prevailing party and therefore cannot affect an award of attorney's fees. Rude is seeking to invalidate CIRI's proxies. Whether Rude prevails on this information claim has no bearing on whether CIRI's proxies should have been invalidated, but only on whether Rude was entitled to certain information back when he was a director. The appropriate relief for a denial of corporate information is an injunction,[47] to which, again, Rude is no longer entitled. Therefore, we do not address Rude's moot claim that he was denied corporate information to which he was entitled as a director.

### 9. Rude abandoned his argument that CIRI impermissibly refused to disclose information to which he was entitled as a shareholder.

 Rude's second information claim argues that he was denied access to shareholder email addresses to which he was entitled as a shareholder. He argues that AS 10.06.430(b)[48] required CIRI to provide him

---

45. AS 10.06.450(d) provides:
 A director has the absolute right at a reasonable time to inspect and copy all books, records, and documents of every kind and to inspect the physical properties of the corporation or a domestic or foreign subsidiary of the corporation. Inspection by a director may be made in person or by agent or attorney and the right of inspection includes the right to copy and make extracts.

46. *Mielke v. Matanuska Elec. Ass'n*, Mem. Op. & J. No. 1047, 2001 WL 34818260, at *2 (Alaska, Sept. 26, 2001) ("The public interest exception does not apply to this case [addressing the same issue] ... because applying the mootness doctrine would not create a circumstance in which

the issues in Mielke's claim are subject to repetition yet continually evade review. It is possible that the issues disputed in Mielke's case could be repeated. Informational access to a quasi-public entity is arguably important to the public interest. But it is readily conceivable that another director could bring suit to force MEA management to divulge sought-after information, and timely judicial review would be possible, assuming the plaintiff remained a director.").

47. *See Mielke*, 2001 WL 34818260, at *3.

48. AS 10.06.430(b) provides:
 A corporation organized under this chapter shall make its books and records of account, or

this information for the "proper purpose" of soliciting proxies. CIRI responds by arguing first that Rude abandoned this argument below, second that no proper shareholder request for information appears in the record, and third that AS 10.06.430(b) does not require a corporation to deliver corporate information to a shareholder. The superior court granted summary judgment on the first two of these bases and also found that Rude never identified a proper purpose for a shareholder inspection.

Rude has abandoned his shareholder claim for information. Once the superior court had granted summary judgment to CIRI on most of Rude's counterclaims, the superior court gave Rude an opportunity to identify remaining counterclaims. When Rude failed to do so CIRI filed a motion to dismiss the remaining counterclaims. Rude opposed CIRI's motion and identified four remaining counterclaims, none of which concerned shareholders' rights to information. The superior court then converted CIRI's motion to a motion for summary judgment on the four remaining counterclaims exactly as delineated by Rude and gave the parties an opportunity to file briefing. Rude's failure to identify shareholder information requests as a live issue at this point constitutes an abandonment of his claim.[49] CIRI was therefore entitled to summary judgment on this claim.

For the foregoing reasons, CIRI is entitled to summary judgment on all of Rude's counterclaims. We now turn to CIRI's original claims that the New Alliance proxy materials contained material misrepresentations.

## B. CIRI's Claims

The superior court determined that five statements or sets of statements in the New Alliance proxy solicitations were materially misleading as a matter of law. Rude responds that four of these sets of statements are true while the fifth is not misleading because it is aspirational. CIRI urges us to affirm the superior court and further argues that the superior court erred by failing to grant CIRI summary judgment on three other allegedly false statements made by New Alliance.

Alaska law prohibits material misrepresentations in proxy solicitations.[50] Alaska's proxy regulations define when a statement or series of statements is misleading:

> A misrepresentation is a statement that, at the time and under the circumstances in which it is made (1) is false or misleading with respect to a material fact; (2) omits a material fact necessary in order to make a statement made in the solicitation not false or misleading; or (3) omits a material fact necessary to correct a statement, in an earlier communication regarding the solicitation of a proxy for the same meeting or subject matter, which has become false or misleading.[51]

The same regulation provides that a "misrepresentation is material if there is substantial likelihood that a reasonable shareholder

certified copies of them, reasonably available for inspection and copying at the registered office or principal place of business in the state by a shareholder of the corporation. Shareholder inspection shall be upon written demand stating with reasonable particularity the purpose of the inspection. The inspection may be in person or by agent or attorney, at a reasonable time and for a proper purpose. Only books and records of account, minutes, and the record of shareholders directly connected to the stated purpose of the inspection may be inspected or copied.

**49.** *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980) (citing *Lewis v. State*, 469 P.2d 689, 691–92 n. 2 (Alaska 1970)) ("Failure to argue a point constitutes an abandonment of it."); *see also Powercorp Alaska, LLC v. Alaska Energy Auth.*, 290 P.3d 1173, 1186 (Alaska 2012)

(citing *Hidden Heights Assisted Living, Inc. v. State, Dep't of Health & Soc. Servs., Div. of Health Care Servs.*, 222 P.3d 258, 270 n. 60 (Alaska 2009) and *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991)) (holding that inadequate briefing of a claim constitutes waiver).

**50.** AS 45.55.160 ("A person may not, in a document filed with the [Commissioner of Commerce, Community, and Economic Development or a designee of the commissioner] or in a proceeding under this chapter, make or cause to be made an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.") (substituted language from AS 45.55.990(1) (defining "administrator")).

**51.** 3 AAC 08.315(a).

would consider it important in deciding how to vote."[52] Additionally, the regulation provides that

> [a] series of statements or omissions that are objectively false or misleading, but which might not be material misrepresentations if considered separately, might be material misrepresentations if there is a substantial likelihood that a reasonable shareholder would consider the series important in deciding how to vote.[53]

■ Alaska applies the "total mix" standard for determining the materiality of omitted facts.[54] Under this standard, "an omitted fact is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'"[55] For affirmative misrepresentations accompanied by accurate information, the question is whether the accurate information neutralizes the misleading information.[56] "'[N]ot every mixture with the true will neutralize the deceptive. If it would take a financial analyst to spot the tension between the one and the other, whatever is misleading will remain materially so, and liability should follow.'"[57]

Although the issue of materiality is generally one of fact, we have held that the issue "may be resolved as a matter of law on summary judgment 'if the established [misrepresentations] are so obviously important to an investor, that reasonable minds cannot differ on the question of materiality.'"[58]

1. **The superior court did not err by granting summary judgment to CIRI on New Alliance's statements concerning CIRI's liquidation.**

■ The first set of statements the superior court found materially misleading were found in New Alliance's third mailer:

**Who is liquidating CIRI?** The New Alliance believes CIRI is being liquidated by management. As of May 2006: CIRI sold total ANCSA land entitlements of **$336,344,180. Included in this amount was the sale of $275,141,211 worth of federal surplus properties.**

The CIRI May 1996 newsletter listed CIRI's original ANCSA land entitlement at **1,301,515** acres of surface and **2,366,685** acres of subsurface estate. *CIRI traded 602,399 acres of surface and subsurface estate for our federal surplus properties.*

Page 7 of the CIRI 2007 Annual Report lists CIRI's current ANCSA land entitlement at approximately **600,000** acres of surface and **1,300,000** acres of subsurface estate. **Our land entitlements have been reduced by approximately 700,000 acres of surface and 1,000,000 acres of subsurface estate.** (Emphases in original.)

The basis for the superior court's conclusion that these statements, taken together, were misleading was an affidavit filed by CIRI's Director of Land and Resources Kim Cunningham. That affidavit stated, in part:

> Since CIRI's inception, in no way has CIRI "sold" or "liquidated" anywhere close to 700,000 acres of surface or 1,000,000 acres of subsurface lands that CIRI received as [its] ANCSA entitlement. The original ANCSA lands made available to CIRI for selection within its region were of little value because they consisted largely of "mountain tops and glaciers." Through a comprehensive settlement with the federal government, followed by a series of land exchanges, CIRI agreed to forego certain of its original entitlement acreage in exchange for potentially more valuable land of a lesser acreage outside of the CIRI

---

52. *Id.; see also Meidinger v. Koniag, Inc.*, 31 P.3d 77, 83 (Alaska 2001).

53. 3 AAC 08.315(a).

54. *Skaflestad v. Huna Totem Corp.*, 76 P.3d 391, 397 (Alaska 2003).

55. *Meidinger*, 31 P.3d at 84 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

56. *Id.*

57. *Id.* (quoting *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1097, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991)).

58. *Id.* at 83 (quoting *TSC Indus.*, 426 U.S. at 450, 96 S.Ct. 2126) (internal quotations omitted).

region. As stated in the 1996 Annual Report at 21, the land CIRI agreed to accept for its ANCSA entitlement consisted of approximately 699,000 acres of surface estate and 1,764,000 acres of subsurface estate. To date, CIRI has received over 90% of its entitlement, as restructured....

... CIRI's business records [attached to the affidavit] reflect that as of April 2, 2008, CIRI owned 606,057 acres of surface estate, and had sold only 11,755 acres of surface estate, for a total sales price of $306,139,284.... CIRI owned 1,559,033 acres of subsurface estate, and had sold only 118,763 acres for a total sales price of $31,105,256....

CIRI still owns over 90% of the acreage it received under ANCSA....

In granting summary judgment, the superior court found that asking "who is liquidating CIRI" gave the false impression that its assets were being liquidated or sold off. The superior court rejected the defendants' argument that they had a good-faith basis for believing that CIRI was liquidating large landholdings.

On appeal, Rude does not argue that he had a good-faith belief that the New Alliance statements were true, but rather that they are true. Rude argues that "[t]he New Alliance's third mailer did not state or imply that CIRI had sold or liquidated 700,000 acres of surface estate or 1,000,000 acres of subsurface estate, only that CIRI's *entitlement* to this acreage had been traded away for government surplus property, much of which was sold between 1997 and the present." But taken together, the three paragraphs clearly suggest the former. By titling this section of the mailer "Who is liquidating CIRI?" and claiming that CIRI had disposed of vast estates, New Alliance suggested that major assets are being sold as part of a total dismantling of CIRI. This is an affirmative misrepresentation. It is material because, as the superior court noted, "a reasonable shareholder would of course consider it important when deciding how to vote if he/she understood that 700,000 acres of surface estate and 1,000,000 acres of subsurface estate had been liquidated without explanation."

By mentioning the $336 million in land sales, along with the reductions in CIRI's entitlement, without mentioning that the former was for the sale of only 12,000 acres of surface estate and 119,000 acres of subsurface estate and that the latter was as a result of swapping less valuable (though larger) acreage for more valuable (though smaller) acreage, the mailer suggests that more than half of CIRI's original ANCSA entitlement has been sold. The omission of any explanation as to the sales and land swap is material because "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' " [59] Had a shareholder known that the reductions in landholdings came as part of a swap for more valuable holdings, and that the $366 million came from selling only a small part of CIRI's estate, this would have significantly altered the total mix of information. CIRI was therefore entitled to summary judgment on its claim that the New Alliance statements concerning CIRI's "liquidation" are misleading.

2. **The superior court did not err by granting summary judgment to CIRI on New Alliance's statements concerning shareholder rights.**

█ The superior court also found materially misleading the following statements from New Alliance's third mailer:

**Shareholder participation.** Section 2(b) of ANCSA says "*Natives shall have maximum participation in decisions affecting their rights and property.*"

We believe shareholder participation is lacking in our corporation.... Shareholders do not get to vote on: the sale of large ANCSA land and natural resource properties; large cash donations; the granting of CIRI owned stock to senior executives; political donations; large payments made to lobbyists and consultants; nor do they get to vote on legislation that would affect their rights or property. We want to change this! (Emphases in original.)

**59.** *Meidinger,* 31 P.3d at 84 (quoting *TSC Indus.,* *Inc.,* 426 U.S. at 449, 96 S.Ct. 2126).

The superior court concluded that "[t]he overall message communicated by both statements, read together, is that CIRI is depriving shareholders of legal rights and that shareholders are entitled to vote on operational decisions." The court noted that Section 2(b) of ANCSA was a congressional declaration as to how the settlement of Native claims should be accomplished, not a law concerning the day-to-day operations of ANCSA corporations.[60] Instead, the court noted, paraphrasing AS 10.06.450(a),[61] that "under Alaska law, the board of directors, not shareholders[,] has the right to make both day-to-day and long-term management and operational decisions." The superior court rejected New Alliance's argument that the statement only suggested that the law should be changed, saying that it was "not at all clear from the statement ... that [New Alliance] was suggesting a change of law." Finally, the superior court noted that in 1997, Superior Court Judge Peter A. Michalski had ordered Rude to issue a correction to his proxy statement saying, among other things, "Under Alaska law, the Board of Directors, not the shareholders, is responsible for managing the business and affairs of the corporation. Ordinary business decisions, therefore, are not appropriate matters for a shareholder vote."

Rude argues on appeal that these statements were not misleading because they were "merely aspirational." "The New Alliance," he argues, "is stating that if shareholders elect a majority of New Alliance directors, the directors will consult with shareholders and seek advisory votes on certain large transactions." But the New Alliance materials give the impression that the supposed lack of shareholder participation in CIRI decisions is a violation of Section 2(b) of ANCSA. Rude's after-the-fact explana-

tion—that New Alliance was merely proposing advisory votes—is unpersuasive because New Alliance could easily have said that in the mailer, but chose not to.[62] Instead, it left shareholders with the impression that their rights were being violated by the CIRI board. Writing proxy materials is not and should not be an exercise in how much can be insinuated about the other side without outright lying. As the superior court correctly found, this misrepresentation was material because a reasonable shareholder would consider the fact that the CIRI board was denying her rights important in considering how to vote. Summary judgment was therefore appropriate as to these statements.

3. **The superior court did not err by granting summary judgment to CIRI on New Alliance's statements that "a hardcore minority of 6 directors" controlled CIRI.**

█ Third, the superior court found that it was a material misrepresentation for New Alliance to say on its website that "never again will a hardcore minority of 6 directors control our corporation." The superior court rejected New Alliance's argument that it was referring to the power of six directors to select an executive committee that conducted much of CIRI's business. New Alliance omitted this explanation from the statement on its website. As a result, the total mix of available information suggested improper corporate governance.[63] The superior court concluded "[a] minimum of eight of the fifteen directors is required to command a majority" and that the New Alliance statement that a six-member minority was controlling the corporation was therefore false. The superior court further found that the statement suggested that a minority of directors is "somehow improperly controlling the cor-

60. 43 U.S.C. § 1601(b) (2006).

61. "All corporate powers shall be exercised by or under the authority of, and the business and affairs of a corporation shall be managed under the direction of, a board of directors except as may be otherwise provided in this chapter." AS 10.06.450(a).

62. *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1198 n. 10 (Alaska 1995) (citing *Alas-*

*ka Int'l Constr., Inc. v. Earth Movers of Fairbanks*, 697 P.2d 626, 629 (Alaska 1985)) ("[P]ost hoc rationalizations are suspect and must be viewed critically, [although] they still may be considered.").

63. *See Skaflestad v. Huna Totem Corp.*, 76 P.3d 391, 397 (Alaska 2003); *Meidinger*, 31 P.3d at 84 (quoting *TSC Indus., Inc.*, 426 U.S. at 449, 96 S.Ct. 2126).

poration," thus causing a reasonable shareholder to consider the statement important in deciding how to vote. It is significant that this statement dovetails with New Alliance's misrepresentation that shareholders are being improperly deprived of their rights to participate in corporate governance. Since a reasonable shareholder would consider New Alliance's series of statements concerning improper corporate governance important in deciding how to vote, we conclude summary judgment was appropriate as to this statement.

#### 4. The superior court did not err by granting summary judgment to CIRI on New Alliance's statements.

These three misrepresentations permeated New Alliance's proxy solicitation and together gave the materially misleading impression that the CIRI board was improperly depriving shareholders of the benefits of corporation ownership. Because these three misrepresentations, taken together, are sufficient to justify the superior court's decision to void the New Alliance proxies, we need go no further. Addressing further alleged misrepresentations can have no bearing on CIRI's status as the prevailing party.[64] We affirm the superior court's grant of summary judgment to CIRI and the court's decision to void the New Alliance proxies.

### C. Rude's Second Appeal

Rude's second appeal in this case challenges the superior court's fee award and three procedural matters. First, Rude argues that the attorney's fee award to CIRI should be reduced to zero based on various alleged forms of misconduct committed by

CIRI. Second, Rude argues that the court improperly refused to admit the exhibits that Rude attached to his Rule 60(b) motion. Third, Rude argues that the superior court wrongly denied his Rule 60(b) motion for relief from judgment on procedural grounds and should have reached the substance of his argument. Finally, Rude argues that the court erred in dismissing New Alliance as a party. None of these arguments has merit, and we affirm the superior court on all points.

#### 1. The superior court did not abuse its discretion in awarding attorney's fees to CIRI.

Following summary judgment on all of CIRI's claims and Rude's counterclaims, the superior court ordered Rude to pay CIRI attorney's fees totaling $43,773.80 and costs totaling $5,441.14.[65] Rude challenges this award on several bases.

Alaska Civil Rule 82(b)(2) provides that in cases without money judgments, the superior court "shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." Here CIRI submitted evidence showing that it had spent $223,530 in litigating the claims and counterclaims against Rude, and the superior court accordingly awarded attorney's fees of slightly below 20%. Rude does not challenge that this was the proper presumptive amount under Rule 82. Instead, he argues that the superior court abused its discretion[66] in failing to vary the presumptive fee award according to the fee variance factors of Rule 82(b)(3).[67]

---

64. *Schweitzer v. Salamatof Air Park Subdivision Owners, Inc.*, 278 P.3d 1267, 1273 (Alaska 2012) (explaining that the prevailing party is "the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered" (internal quotation marks omitted) (quoting *Progressive Corp. v. Peter ex rel. Peter*, 195 P.3d 1083, 1092 (Alaska 2008))).

65. Although the heading of this section of Rude's brief mentions costs as well as attorney's fees, he makes no arguments about costs in the body of his brief.

66. "Application of Rule 82(b)(3) factors is discretionary, not mandatory." *Rhodes v. Erion*, 189 P.3d 1051, 1055 (Alaska 2008).

67. Alaska R. Civ. P. 82(b)(3) provides:
 The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted:
 . . . .
 (G) vexatious or bad faith conduct;
 . . . .
 (I) the extent to which a given fee award may be so onerous to the non-prevailing party that

First, he argues that CIRI's fee award should be reduced because CIRI acted in bad faith by: (1) refusing to disclose shareholder email addresses to the New Alliance candidates; [68] (2) failing to include the New Alliance candidates in its proxy materials; (3) soliciting proxies before it sent out its annual report; (4) failing to include the New Alliance dividend proposal in its proxy materials; (5) improperly nominating a slate of board-endorsed candidates; (6) improperly placing only one line for write-in candidates on its proxies; (7) paying the campaign expenses of board-nominated candidates but not the New Alliance candidates; and (8) removing Rude from the board by failing to list his name in its proxy materials. But with the exception of the claim about election expenses, these are just a rehash of Rude's counterclaims. Rude's argument is basically that the very conduct for which CIRI is not liable should nonetheless reduce the attorney's fees he owes. Because CIRI is entitled to judgment on Rude's election-fairness claims, it is also entitled to attorney's fees on those claims.[69, 70]

Further, with the exception of the claim that CIRI refused to disclose shareholder email addresses, Rude explicitly stated in his opposition to CIRI's motion for attorney's fees that neither party had engaged in vexa-tious or bad-faith conduct. He has therefore waived this argument.[71]

■ Rude's second argument, relying on Rule 82(b)(3)(I),[72] is that "[t]he fee award granted by the trial court is so onerous … that it would deter similarly situated litigants from the voluntary use of the courts to remedy any future misconduct of ANCSA corporations." CIRI argues that subsection I does not apply to Rude because he did not make "voluntary use of the courts," but was instead sued by CIRI.[73] As CIRI seems to recognize, though, this rule does apply to Rude's counterclaims. As to those claims, Rude argues that "rational apathy" discourages shareholders from bringing potentially costly claims against corporations in which they can expect little individual benefit (though systemic benefits may be great). As CIRI points out, though, here "Rude's counterclaims were motivated by private concerns, particularly his personal desire to seek election to the CIRI board of directors." Given that Rude had a strong personal stake in the outcome of his counterclaims, the superior court did not abuse its discretion in declining to vary from the Rule 82 fee schedule.

Relying on Rule 82(b)(3)(J), Rude next argues that "[t]his [c]ourt should vacate CIRI's award of costs and attorney fees because

it would deter similarly situated litigants from the voluntary use of the courts;
(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and
(K) other equitable factors deemed relevant.

**68.** Included in this argument is an allegation that CIRI perjured itself by "dissembl[ing] and misrepresent[ing] to the [superior] court that it did not use E-mail addresses" for campaign purposes. However, Rude did not argue this below and has thus waived it. *See Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) ("A party may not raise an issue for the first time on appeal.").

**69.** *See Lentine v. State*, 282 P.3d 369, 381 (Alaska 2012) (A party's "characterization of her actions as an 'innocent mistake' involves a question of fact that was litigated at trial, and the superior court's failure to consider it again in determining attorney's fees was not an abuse of discretion.").

**70.** Rude also argues that the superior court should have applied the equitable doctrine of unclean hands to reduce CIRI's attorney's fee award. But because his argument that CIRI's hands were unclean is premised on the claims of specific electoral misconduct by CIRI—claims that have no merit—his argument must also fail.

**71.** *See State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980) (citing *Lewis v. State*, 469 P.2d 689, 691–92 n. 2 (Alaska 1970) ("Failure to argue a point constitutes an abandonment of it.")).

**72.** *See supra* note 67.

**73.** *See Little Susitna Constr. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 29 (Alaska 1997) (noting that a losing party "ha[d] failed to explain, either below or on appeal, how [subsection I] might apply to its situation, particularly since [the prevailing party] initiated the litigation and [the losing party] made no 'voluntary use of the courts' ") (citing Rule 82(b)(3)(I)).

CIRI's decision to bring this case was influenced by management's desire to discourage actions by other shareholders to reform CIRI." As CIRI notes, "[n]o factual or legal basis exists for this assertion," and Rude cites to no evidence in this portion of his brief. Given the lack of any support for Rude's assertion, it was not an abuse of discretion for the superior court to decline to vary the fee award.

Finally, Rude argues that the superior court should have applied "the equitable doctrine of common benefit" to "protect[ ] a lone shareholder from bearing the burden of litigation that is intended to benefit many shareholders, to promote corporate suffrage, and to protect the corporate democracy." As discussed above, though, Rude's private interest in bringing his counterclaims was substantial. The superior court was therefore acting within its discretion when it declined to vary the fee award.

Because Rude has not shown that the superior court abused its discretion in declining to vary from Rules 82's presumptive fee awards, we affirm the superior court's fee award.

**2. The superior court did not abuse its discretion by striking from the record exhibits filed with Rude's Rule 60(b) motion.**

 Rude next argues that the superior court abused its discretion in refusing to admit 33 exhibits attached to his Rule 60(b) motion. Rude's motion for relief from judgment, filed after summary judgment had been granted on all of the claims and counterclaims and after Rude had already filed a notice of appeal, contained 33 new exhibits. CIRI then filed a motion to strike the exhibits on the grounds that they were irrelevant to Rude's Rule 60 motion, that they were filed much too late and were "a blatant attempt to inappropriately supplement the record on appeal," and that they were not authenticated. The superior court granted CIRI's motion for the reasons stated therein.

On appeal, Rude argues that the motion was brought as a Rule 12(f) motion to strike and that Rule 12(f) empowers courts to strike material from pleadings only, and not exhibits. He argues that even if Rule 12(f) were applicable, the exhibits in question "were not redundant, immaterial, impertinent, or scandalous" because they were "CIRI's own business records." He further argues that the superior court erred in finding that the evidence was not relevant under Alaska Evidence Rules 401 and 403. He finally argues that the superior court erred in finding that the exhibits were not admissible because they were not authenticated.

The superior court did not abuse its discretion in refusing to admit the exhibits. As the superior court found, Rude's new exhibits were filed after summary judgment had already been granted on all claims and those judgments had already been appealed. At that point, Rude's delay in filing the exhibits could fairly be called undue, and admitting the exhibits—i.e., giving Rude an opportunity to supplement the appellate record after the case had already terminated—would have unfairly prejudiced CIRI.[74] Notably, Rude did not move for relief from judgment under Civil Rule 60(b)(2). That rule provides for relief in cases of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." However, even had Rude argued under this rule, there is nothing in the record to suggest that the 33 new exhibits were "newly discovered evidence which by due diligence could not have been discovered" earlier. Even under Rule 60(b)(2), then, it appears the exhibits would have been properly excluded.

**3. The superior court did not abuse its discretion by denying Rude's Rule 60(b) motion.**

Rude next argues that the superior court abused its discretion in denying his Rule 60(b) motion for relief from judgment.[75]

---

**74.** Evidence Rule 403 allows a court to exclude relevant evidence "if its probative value is outweighed by the danger of unfair prejudice ... or by considerations of undue delay."

**75.** Rule 60(b) provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal

Rude's arguments in his motion were essentially identical to those he made in opposing summary judgment. Because the superior court did not err in granting summary judgment to CIRI on all claims and counterclaims, its denial of the Rule 60(b) motion was not a reversible error.[76]

## 4. The superior court did not abuse its discretion by entering the stipulated order dismissing New Alliance as a party.

■ Finally, Rude argues that the superior court erred by entering a stipulated order dismissing New Alliance as a party. On July 6, 2009, following the superior court's two main summary judgment rulings, the superior court entered a stipulation and order dismissing defendants Anagick, Kiana, Thomas, and New Alliance as parties. The stipulation was signed by CIRI's attorney, Thomas's attorney, Chris Kiana, and Ella Anagick, who four days before had filed an entry of appearance as attorney on behalf of New Alliance.[77] The stipulation was not signed by Rude's attorney, Fred Triem, who had filed an entry of appearance on behalf of New Alliance in June 2008.

Rude argues that this stipulation was "not effective" with respect to New Alliance because Triem was the attorney of record for New Alliance, and he "has never withdrawn or been substituted." Alaska Civil Rule 81(c), on which Rude relies, provides:

(1) An attorney who files a pleading or appears in a court proceeding on behalf of a party shall be deemed to have entered an appearance for all purposes in that case unless the attorney has filed and served a

limited entry of appearance under (d) of this rule.

(2) Except as otherwise ordered by the court, or except as provided in Rule 81(d) and 81(e)(1)(D), a party who has appeared by an attorney may not thereafter appear or act in the party's own behalf in any action or proceeding, unless order of substitution shall have been made by the court after notice to such attorney.

According to Rude, this rule required a substitution of counsel before Anagick could act on behalf of New Alliance.

■ CIRI responds that neither Rude nor Triem objected to the dismissal below, nor to Anagick's entry of appearance as counsel for New Alliance, and that this point is therefore waived. CIRI is correct. "A party may not raise an issue for the first time on appeal." [78] To be sure, as the court of appeals has recognized in cases in which represented parties try to file pro se pleadings, allowing a party to have multiple representatives who might be working at cross-purposes "could cause considerable confusion." [79] But in situations such as these, the superior court has "the authority" to require parties to consolidate their representation; there is no basis for *requiring* the court to do so.[80] Further, even in situations in which a late entry of appearance may undermine the ability of a precedent attorney to pursue her client's claim effectively, it is up to the party or the aggrieved attorney to raise an objection, at the latest, when the conflict arises. Here, Rude and Triem failed to object and have thus forfeited any objection. The superior court was therefore acting within its

representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise or excusable neglect;
(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]

76. Further, the disposition of this motion is moot. Resolving whether Rude's Rule 60(b) motion was improperly denied has no bearing on prevailing party status at this point.

77. Anagick's signature is actually dated June 29, 2009, five days before she entered her appearance on behalf of New Alliance. Rude does not

mention this in his argument that the superior court abused its discretion in entering the order, and so we will assume that the superior court was acting within its discretion to give after-the-fact effect to Anagick's signature.

78. *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001).

79. *Martin v. State*, 797 P.2d 1209, 1217 (Alaska App.1990).

80. *Id.*

discretion to enter the stipulated order to which no one had objected.[81]

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the superior court.

81. Rude only objected after summary judgment had been granted and attorney's fees awarded. At that point, the only benefit that could inure to Rude in winning on this argument is that some portion of his award of attorney's fees could be apportioned to New Alliance.